■ JULIUS ODEN, Appellant-Respondent, v CHEMUNG COUNTY INDUSTRIAL DEVELOPMENT AGENCY et al., Defendants and Third-Party Plaintiffs-Respondents, and PERSONNEL POOL OF SYRACUSE, INC., et al., Defendants and Third-Party Plaintiffs-Respondents-Appellants. STREETER ASSOCIATES, INC., Third-Party Defendant-Respondent. [621 NYS2d 744] —Mercure, J. Cross appeals (1) from an order of the Supreme Court (Ellison, J.), entered March 25, 1993 in Chemung County, which, *inter alia,* denied plaintiff's motion to set aside the verdict as inadequate, and (2) from a judgment of said court, entered May 9, 1994 in Chemung County, upon a verdict rendered in favor of plaintiff.

In December 1988, plaintiff, at the time a 48-year-old ironworker, was injured when he was hit by a steel column that fell when it was apparently struck by a small hydraulic crane. Plaintiff commenced this action asserting causes of action under Labor Law §§ 200, 240 (1) and § 241 (6) and common-law negligence against (1) the owner of the crane, defendant J.P.W. Riggers & Erectors, Inc. (hereinafter JPW), (2) the crane operator, defendant David E. Dyer, (3) the entity that provided Dyer to JPW, defendant Personnel Pool of Syracuse, Inc., (4) the title owner of the work site, defendant Chemung County Industrial Development Agency (hereinafter IDA), and (4) IDA's lessee with respect to the work site, defendant Anchor Glass Container Corporation. Defendants asserted various cross claims and brought a third-party action for, *inter alia,* common-law indemnity against plaintiff's employer, the general contractor on the project. Following a grant of summary judgment against all defendants except JPW, Dyer and Personnel Pool on the issue of liability under Labor Law § 240 (1) (183 AD2d 998, 999), the matter came on for trial.

At the conclusion of the evidence, Supreme Court directed a verdict on the issue of Labor Law § 240 (1) liability against JPW, Personnel Pool and Dyer and in favor of defendants on their indemnification claims against third-party defendant. On the causes of action asserting liability under Labor Law §§ 200 and 241 (6) and common-law negligence, the jury apportioned liability 70% against IDA and Anchor and 30% against third-party defendant. The jury awarded past damages in the amount of $5,752.75 for medical expenses, $20,000 for pain and suffering and $27,550 for loss of earnings, for a total of $53,302.75. As for future damages, the jury made no award for

pain and suffering but awarded $80,000 for loss of earnings and health and welfare benefits (eight years) and $66,000 for loss of pension benefits (10 years), for a total of $146,000. Supreme Court denied plaintiff's motions to set aside the award of damages as inadequate and, following a hearing pursuant to CPLR 4545 (c), ordered that the award for future economic losses be offset by $141,330 in disability retirement benefits, which, Supreme Court concluded, constituted a collateral source. Plaintiff appeals.*

Plaintiff's primary argument on appeal is that the jury's award for future pain and suffering, loss of pension benefits and loss of earnings is inadequate. We disagree. According appropriate deference to the jury's interpretation of the conflicting evidence (see, Abar v Freightliner Corp., 208 AD2d 999, 1001), we cannot say that the verdict, although low, "deviates materially from what would be reasonable compensation" (CPLR 5501 [c]; see, Raucci v City School Dist., 203 AD2d 714; Santucci v Govel Welding, 168 AD2d 845). Although plaintiff sustained a deep laceration to the back portion of his left leg, a nondisplaced fracture of the left ankle and a crushing injury to his right index finger, requiring amputation at the proximal joint, the proof supports a finding that the injuries healed rapidly, with minimal residual pain or limitation, and the jury was entitled to draw an inference that some of plaintiff's symptoms were simulated or resulted from preexisting conditions (see, Raucci v City School Dist., supra).

Following the accident, plaintiff continued to be able to grip with his right hand and to perform most of his usual activities, including driving, cooking, vacuuming, sweeping, shoveling snow, fishing and using his boat and trailer. Although plaintiff testified that he was right-handed, he acknowledged that he wrote and ate with his left hand, thereby permitting the jury to conclude that he did not sustain an injury to his dominant hand. As for the extent of plaintiff's disability, the evidence established that he was able to perform a job where he was not required to stand for extended periods of time or could work sitting down, such as driving a truck or a cab, and that he was capable of lifting more than 50 pounds. In fact, plaintiff testified that he worked as a construction supervisor for 34 weeks during 1990 and that he was offered a job as a truck driver in 1992 and was ruled ineligible only because of

* Although Personnel Pool and Dyer filed notices of appeal, they filed no briefs and seek no affirmative relief on this appeal. We deem their appeals abandoned.

his driving record. Under the circumstances, the jury was free to discount plaintiff's claim of disability and his experts' assumption that he was permanently unemployable, which formed the basis for their opinion concerning future lost wages and pension benefits.

Finally, we turn to the issues surrounding Supreme Court's reduction of the award for loss of future economic benefits by the value of plaintiff's vested disability retirement benefits. Initially, we agree with third-party defendant that Supreme Court did not err in its determination that the benefits constitute a collateral source within the purview of CPLR 4545 (c) *(see, Levy v Gemma Contr. Co.,* 184 AD2d 219) or in valuing the benefits at $141,330 in accordance with the testimony of plaintiff's own expert. Further, in view of Supreme Court's clear and unambiguous instruction that the jury was not to consider plaintiff's disability pension benefits in their deliberations *(cf., supra),* we reject the speculation that the jury erroneously subtracted the value thereof in reaching their verdict for loss of future pension benefits.

We agree with plaintiff, however, that Supreme Court erred in reducing the award for future loss of earnings and health and welfare benefits by the excess of the value of plaintiff's disability pension benefits over the jury award for loss of pension benefits. In our view, the provision of CPLR 4545 (c) that "[i]f the court finds that any *such* cost or expense was or will, with reasonable certainty, be replaced or indemnified from any collateral source, it shall reduce the amount of the award by such finding" (emphasis supplied) supports the conclusion that in the rare case, as here, where a jury award for a discrete category of economic loss is wholly satisfied and in fact exceeded by a collateral source of the very same category, the statute operates only to eliminate the jury award for that category *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 76; *Matter of Alonzo M. v New York City Dept. of Probation,* 72 NY2d 662, 665).

Cardona, P. J., White, Casey and Peters, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as partially reduced the jury award for future loss of earnings and health and welfare benefits by virtue of plaintiff's receipt of pension benefits constituting a collateral source; the net award for future economic loss is increased from $4,670 to $80,000 and the total net damage award is increased from $57,972.75 to $133,302.75; and, as so modified, affirmed. Ordered that the judgment is modified, on the law, without costs, by increasing the total net damage

award from $57,972.75 to $133,302.75 and remitting the matter to the Supreme Court for computation of interest and calculation of the parties' respective shares thereof, and, as so modified, affirmed.