OPINION OF THE COURT
 

 Titone, J.
 

 CPLR 4545 (c) authorizes the court in a personal injury action to reduce the amount of the plaintiff’s award if it finds
 
 *84
 
 that any element of the economic loss encompassed in the award was or will be replaced, in whole or in part, from a collateral source. The issue before us on this appeal is whether the economic loss portion of an award should be reduced by the proceeds from
 
 any
 
 collateral source or whether reduction is authorized only when the collateral source payment represents reimbursement for a particular category of loss that corresponds to a category of loss for which damages were awarded. Based on both the language and the purposes of CPLR 4545 (c), we now adopt the latter narrower construction of the statute.
 

 The present action arises out of a December 1988 incident in which plaintiff, a 48-year-old ironworker, was injured when he was struck by a falling steel column that was apparently dislodged by a small hydraulic crane. Plaintiff sued the owner of the crane, the crane operator, the contract agency that provided the crane operator and the owner and lessee of the work site, alleging various Labor Law and common-law causes of action. The defendants subsequently asserted cross claims against each other, as well as third-party claims against Streeter Associates, plaintiff’s employer.
 

 Following a bifurcated jury trial, plaintiff was awarded damages as follows: $5,752.75 for past medical expenses, $20,000 for pain and suffering, $27,550 for lost past earnings, $66,000 for lost pension benefits and $80,000 for future lost earning and health and welfare benefits. The total was apportioned among the defendants, and all defendants were granted judgment over against third-party defendant Streeter. Following a hearing pursuant to CPLR 4545 (c), the court ordered that the total award for future economic loss ($146,000) be reduced by the $141,330, the value of the disability retirement benefits that plaintiff expected to receive over his lifetime.
 

 On plaintiff’s appeal,
 
 [1]
 
 the Appellate Division modified by restoring the full amount of the $80,000 award for future lost earnings and benefits and adjusting the total damages award upward accordingly. The Court held that "where a jury award for a discrete category of economic loss is wholly satisfied and in fact exceeded by a collateral source of the very same category, [CPLR 4545 (c)] operates only to eliminate the jury award for that category.” (211 AD2d 997, 999.) The Court impliedly determined that only the award for lost pension benefits was
 
 *85
 
 sufficiently related to the collateral disability retirement benefits to qualify for the offset permitted by CPLR 4545 (c). Third-party defendant Streeter has appealed by leave of this Court.
 

 Under traditional common-law principles, a personal injury award may not be reduced or offset by the amount of any compensation that the injured person may receive from a source other than the tortfeasor
 
 (see, Kish v Board of Educ.,
 
 76 NY2d 379, 384;
 
 Healy v Rennert,
 
 9 NY2d 202, 206). The collateral source rule, which is both a rule of evidence and a rule of damages, is based on the premise that a negligent defendant should not, in fairness, be permitted to reduce its liability by the proceeds of insurance or some other source to which that defendant has not contributed
 
 (Kish v Board of Educ., supra,
 
 at 384;
 
 Healy v Rennert, supra,
 
 at 206;
 
 see, Standard Oil Co. v United States,
 
 153 F2d 958,
 
 affd
 
 332 US 301). Although the rule has been criticized
 
 (see,
 
 Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C4545:l, at 344), it was not modified or curtailed by the courts of this State.
 

 Beginning in 1975, however, the Legislature initiated efforts to limit the rule’s effect in response to a perceived "crisis” in the medical malpractice insurance industry. The first incursion on the rule’s scope was an amendment to CPLR 4010 which permitted juries in medical malpractice actions to consider evidence of collateral source payments when determining the award for economic loss (L 1975, ch 109). This exception was solidified and strengthened in 1981, when the Legislature made the reduction for compensation from collateral sources mandatory and transferred the responsibility for making the reduction from the jury to the court (L 1981, ch 269).
 

 In 1984, CPLR 4010 was repealed and its provisions were incorporated in the newly enacted CPLR 4545 (a) (L 1984, ch 701). At the same time, the mandatory offset for collateral source payments was extended, on a limited basis, to personal injury and wrongful death awards obtained by public employees
 
 (id.; see,
 
 CPLR 4545 [b]).
 
 [2]
 
 Additional changes in CPLR 4545 (a) were adopted the following year extending the collateral source reduction to dental malpractice awards and to all medical and dental malpractice awards for
 
 future
 
 economic losses that would, "with reasonable certainty,” be reimbursed or
 
 *86
 
 indemnified (L 1985, ch 294, § 8;
 
 cf., Ryan v City of New York,
 
 79 NY2d 792 [noting that Legislature had not extended the rule permitting reduction for future collateral source payments to actions by public employees]).
 

 The most recent step in the process was the 1986 enactment of CPLR 4545 (c), which applies to all personal injury, property damage and wrongful death actions commenced on or after June 28, 1986 (L 1986, ch 220, § 36). The statute provides:
 

 "In any action brought to recover damages for personal injury, injury to property or wrongful death, where the plaintiff seeks to recover for the cost of medical care, dental care, custodial care or rehabilitation services, loss of earnings or other economic loss, evidence shall be admissible for consideration by the court to establish that any such past or future cost or expense was or will, with reasonable certainty, be replaced or indemnified, in whole or in part, from any collateral source such as insurance * * *, social security * * * workers’ compensation or employee benefit programs”.
 

 Under the statute, "[i]f the court finds that any such cost or expense was or will, with reasonable certainty, be replaced or indemnified from any collateral source, it shall reduce the amount of the award by such finding.”
 

 Relying on its view of the language and purposes of the statute, appellant Streeter argues that CPLR 4545 (c) requires the court to reduce the total award for economic loss by the total amount of collateral source payments for economic loss that the plaintiff has or will receive as a result of the incident that led to the lawsuit. In contrast, plaintiff contends that the award for economic loss should be broken down into categories and the reductions for collateral source payments should then be made only in those categories that correspond to analogous collateral source categories. We conclude that plaintiff has the better of the argument.
 

 We note at the outset that CPLR 4545 (c) is a statute enacted in derogation of the common law and, as such, is to be strictly construed
 
 (see,
 
 McKinney’s Cons Laws of NY, Book 1, Statutes § 301 [a];
 
 see also, Matter of Bayswater Health Related Facility v Karagheuzoff,
 
 37 NY2d 408, 414). Further, it is to be construed in the narrowest sense that its words and underlying purposes permit, since the "rules of the common law must be held no further abrogated than the clear import of the language used in the statute absolutely requires” (McKinney’s,
 
 op. cit.,
 
 § 301 [b]).
 

 
 *87
 
 These principles and a close analysis of the statutory text provide support for plaintiffs position. The statute first refers to actions to recover for enumerated and other economic losses and then authorizes the trial court to consider that any "such” losses were or will be replaced from a collateral source. This use of the term "such”, which serves as a grammatical echo for its immediate antecedent (McKinney’s,
 
 op. cit,
 
 § 254, at 418), suggests that a direct correspondence between the item of loss and the type of collateral reimbursement must exist before the required statutory offset may be made.
 

 The statute’s provision for the offset of
 
 "any
 
 such cost or expense” by a payment from
 
 "any
 
 collateral source” (emphasis added) does not contradict this conclusion. The statute’s dual reference to "any” cost or expense and "any” collateral source was evidently a legislative effort to establish that, apart from the express statutory reservations, there are to be no limitations on the types of economic losses or the types of collateral benefits that the offset is intended to reach
 
 (cf.,
 
 CPLR 4545 [b]). Nothing in the use of that inclusive adjective negates the separate implication arising from the statute’s other operative language that only those collateral source payments that actually replace a particular category of awarded economic loss may be used to reduce the injured’s judgment.
 

 The statutory requirement that the court make a finding that the awarded cost or expense "was or will * * *
 
 be replaced or
 
 indemnified” (emphasis added) from a collateral source belies the contention that the statute’s juxtaposition of
 
 "any
 
 * * * cost or expense” with
 
 "any
 
 collateral source” was intended as a direction to treat all collateral source payments as fungible. To "replace” means to "take the place of” or substitute (Webster’s Ninth New Collegiate Dictionary 999 [1986]); to "indemnify” means to make good on a loss that has been incurred (Black’s Law Dictionary 692 [5th ed]). A disability annuity received as a result of an accident cannot be said to "replace” an out-of-pocket medical expense that the plaintiff incurred as a result of accident-related injuries. The proposition that a payment from "any” collateral source "replace[s] or indemnified]” "any” accident-related cost or expense thus cannot be sustained.
 

 The correctness of this construction of the statute is also supported by the policy considerations underlying the common-law collateral source rule and its recent legislative modifications. The chief criticism of the common-law rule was that it permitted double recovery
 
 (see, Ryan v City of New York,
 
 79
 
 *88
 
 NY2d 792, 795,
 
 supra;
 
 Alexander,
 
 op. cit.,
 
 at 344). While the resulting windfalls to plaintiffs were deemed a necessary and acceptable "evil” when the primary aim of tort law was to punish and deter wrongdoers, the collateral source rule’s doctrinal underpinnings were seriously eroded by the law’s shift in focus to the considerably different goal of compensating injured individuals. If just compensation is the main end toward which tort law is directed, it makes little sense to perpetuate a damages rule that tolerates two or more recoveries for the same injury. It was this perception, along with rising insurance costs, that motivated the Legislature to take steps to modify the common-law rule
 
 (see,
 
 Governor’s Program Mem, L 1986, ch 220, 1986 NY Legis Ann, at 135-136; Governor’s Advisory Commn on Liability Insurance [1986] [recommending CPLR 4545 (c)’s adoption];
 
 see also,
 
 Governor’s Program Mem, L 1985, ch 294, 1985 NY Legis Ann, at 131; Mem of Assembly Rules Comm, L 1984, ch 701, 1984 NY Legis Ann, at 251; Mem of Assemblyman Tallón, L 1981, ch 269,1981 NY Legis Ann, at 153).
 

 The Legislature’s goal of eliminating plaintiffs’ duplicative recoveries is served by subtracting from the total award those collateral source payments that duplicate or correspond to a particular item of economic loss. The broader rule that appellant Streeter advocates — which would mandate subtraction of all collateral source payments arising from the incident regardless of whether they duplicate an awarded item of pecuniary loss — would ouercompensate and produce results beyond those necessary to remedy the "evil” at which the legislation was aimed. Indeed, the rule appellant advances would confer an undeserved windfall on tort defendants and their insurers by permitting' them to obtain a credit for collateral source payments that do not correspond to the items of economic loss that they are being called upon to reimburse.
 

 In this instance, appellant Streeter seeks to have plaintiff’s award reduced by the entire amount he is expected to realize from his disability retirement pension. However, contrary to Streeter’s argument, plaintiff’s retirement pension benefits have not been shown to replace the lost future earnings and health and welfare benefits for which the jury awarded him $80,000. Rather, those benefits are paid in lieu of ordinary pension benefits and do not necessarily correspond to any future earning capacity plaintiff might have had. Indeed, it is undisputed that, notwithstanding his retirement as an ironworker, plaintiff would have been free to earn income from
 
 *89
 
 his labor in other capacities without loss of his disability retirement pension benefits. Thus, it cannot be said that the disability pension benefits plaintiff expects to receive are duplicative of the award he received for lost future earnings. Accordingly, the Appellate Division properly limited the operation of CPLR 4545 (c) in this case by applying plaintiff’s anticipated $141,330 disability pension benefits to reduce to zero the $66,000 award for lost ordinary pension benefits which the disability pension benefits did replace.
 

 We note that, despite appellant Streeter’s expressed concerns about the practicality of requiring a close correspondence between the collateral source payment and the item of pecuniary loss to be replaced, we see no insurmountable difficulty in establishing the necessary linkage in appropriate cases. CPLR 4111 (f), which requires a detailed itemization of the elements included in the jury’s damage award, will operate to facilitate the task. The problem of matching up a collateral source to an item of loss is simply a matter of proof and factual analysis. The burden of establishing the requisite correspondence rests, of course, on the party seeking the CPLR 4545 (c) offset. Where that burden is not sustained because the connection between the item of loss and the collateral source payment is tenuous or because the necessary correspondence between their essential elements is lacking, the purposes of the statute would not be served by applying the mandatory offset.
 

 Finally, plaintiff-respondent’s fact-based argument about the adequacy of the over-all future damages award and the affirmed finding against him on his request for future pain and suffering damages must be rejected at the threshold. Plaintiff did not seek and has not been granted leave to appeal to this Court and, accordingly, is not entitled to the affirmative relief he seeks
 
 (Hecht v City of New York,
 
 60 NY2d 57;
 
 see, Merritt Hill Vineyards v Windy Hgts. Vineyard,
 
 61 NY2d 106, 110-112).
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . Cross appeals that had been taken by two of the defendants were deemed abandoned.
 

 [2]
 

 . The provision was applicable only in cases involving job-related injuries and only employer-sponsored collateral source payments were to be deducted.