James **TURNBULL** and Karen Turnbull, Plaintiffs–Appellees,

v.

**USAIR, INC.,** Defendant–Appellant.

No. 243, Docket 97–7148.

United States Court of Appeals, Second Circuit.

Argued Aug. 27, 1997.

Decided Jan. 6, 1998.

Huber, Buffalo, NY, on the brief), for Defendant–Appellant.

Dan D. Kohane, Buffalo, NY (Vincent G. Saccomando, Hurwitz & Fine, P.C., Buffalo, NY, on the brief), for Plaintiffs–Appellees.

Before: MESKILL, JACOBS, Circuit Judges, and KORMAN,* District Judge.

JACOBS, Circuit Judge:

The sole appellate issue presented in this diversity tort case is the applicability of the New York statute allowing an offset for economic loss that will be recovered from a collateral source. The district court ruled that the jury award for lost future earnings is not subject to offset in the amount of future Social Security disability payments, because the record does not demonstrate that the particular disorders that supported the jury award are the same disorders that supported the Social Security payments. We vacate and remand.

## BACKGROUND

James Turnbull was a passenger aboard an airplane that was taxiing for take-off from the Greater Buffalo International Airport on December 5, 1989, when an overhead console (containing air nozzles, call buttons, and reading lights) swung loose and struck Turnbull on the head. According to Turnbull, the traumatic closed-head injury has caused headaches and a variety of other disorders, including difficulties in maintaining sustained attention, in carrying out orderly sequences of activities, and in coping with novel situations, as well as impaired balance, motor function problems, insomnia and erratic sleep cycles, anxiety, nervousness, and depression.

Turnbull sued USAir, Inc. in New York State Supreme Court, alleging that these disorders permanently disabled him from working. USAir removed the action to the United States District Court for the Western District of New York (Skretny, *J.*) on the basis of diversity jurisdiction. At trial, USAir argued that Turnbull suffered no more than a mild head injury and that Turn-

Richard F. Griffin, Buffalo, NY (Donna M. Lanham, Phillips, Lytle, Hitchcock, Blaine &

* Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

bull's disability, if any, pre-dated the accident. The jury disagreed, and awarded Turnbull damages including $165,000 for past lost earnings and $70,000 for ten years of future lost earnings.

USAir moved post-trial, pursuant to Fed. R.Civ.P. 59(e), to amend the final judgment to reflect an offset for past and future Social Security disability payments in the annual amount of approximately $12,000. In support of its motion, USAir offered to produce Turnbull's signed statement to the Social Security Administration ("SSA"), which specified the disabling condition as "[h]ead injury; traumatic brain injury; post concussion syndrome," and which specified the onset date as December 5, 1989 (the date of the USAir accident). Turnbull's statement to the SSA recounted "[i]ncapacitating headaches; fatigue; inability to tolerate stress; memory loss problems; impaired concentration; loss of coordination; [and] difficulty with balance." Turnbull claimed total disability, and the SSA granted benefits on that basis. USAir's post-trial motion argued that Turnbull's jury award should be reduced because the Social Security disability payments are a collateral source of income that would replace much of the award for Turnbull's past and future lost wages.

■ New York's common-law collateral source rule generally precludes a defendant from offering evidence that a plaintiff is being reimbursed by another source (to which the defendant has not contributed), or from seeking an offset on that basis. But the collateral source rule has been modified by a statute, N.Y. C.P.L.R. § 4545(c), which applies to any claim for personal injury seeking to recover economic loss, and which provides (*inter alia*) that evidence shall be admissible to prove that any such economic loss "was or will ... be replaced or indemnified, in whole or in part, from any collateral source," including Social Security benefits. If the court finds that the plaintiff's economic loss "was or will, with reasonable certainty, be replaced or indemnified from any collateral source, it shall reduce the amount of the award by such finding" less premiums paid by the plaintiff. N.Y. C.P.L.R. § 4545(c) (McKinney 1992).

The district court denied USAir's motion in an unpublished decision and order:

> Mr. Turnbull testified as to a variety of ailments, any of which or any combination of which, could have been the basis for the jury's finding of past and future lost earnings. Thus, although the basis for the Social Security award may be ascertained, it is impossible to find that the necessary "direct correspondence between the item of loss and the type of collateral reimbursement" exists in this case without speculating as to the specific rationale for the jury's award. *Oden v. Chemung County I.D.A. [Industrial Development Agency]*, 87 N.Y.2d 81, 637 N.Y.S.2d 670, 673–74, 661 N.E.2d 142, 145–46 (Ct. of App. 1995). Since the "necessary correspondence between [the] essential elements [of the item of loss and the collateral source payment] is lacking, the purposes of the statute would not be served by applying the mandatory offset." *Id.*, at 674. Additionally, [USAir] cannot sustain its burden of proof of reasonable certainty because any attempt to correspond an item of loss to a type of collateral source would involve speculation as to the basis of the jury's award of the type that Defendant's counsel was forced to engage in at the oral argument of the Motion.

Decision and Order at 6 (final alteration added).

## DISCUSSION

■ This appeal is governed by the decision of the New York Court of Appeals in *Oden v. Chemung County Indus. Dev. Agency*, 87 N.Y.2d 81, 637 N.Y.S.2d 670, 661 N.E.2d 142 (1995). The plaintiff's judgment for economic loss in that case included (i) an award for lost pension benefits, and (ii) an award for future lost earnings. The trial court had applied an offset for the payments under an employer's disability pension program, which the plaintiff expected to receive in his lifetime, and thereby reduced almost to zero the total award for future economic loss.

After considering the language and purpose of § 4545(c), the Court of Appeals held that "the economic loss portion of an award should be reduced ... only when the collat-

eral source payment represents reimbursement for a particular *category of loss* that corresponds to a *category of loss* for which damages were awarded." *Id.* at 84, 637 N.Y.S.2d at 671, 661 N.E.2d 142 (emphasis added). Applying that principle, the court upheld the offset of disability payments against the award for lost pension benefits because the disability payments were "paid in lieu of," and thus corresponded to, the lost pension benefits. Id. at 88, 637 N.Y.S.2d at 674, 661 N.E.2d 142. But the court held there could be no offset against the award for lost earnings because it was evident that the disability payments at issue in that case were contractually payable regardless of the plaintiff's future earnings. The disability payments therefore did not replace or correspond to lost future earnings. *Id.* at 89, 637 N.Y.S.2d at 674.

Here, the district court read *Oden* to preclude an offset unless USAir has demonstrated (1) that the jury based its award of lost earnings upon the itemized finding as to which of the specific disorders claimed by Turnbull caused him to be unable to work, and (2) that Turnbull's Social Security disability payments directly corresponded to that specific disorder or combination of disorders. In support of the district court's ruling, Turnbull makes the following argument: USAir at trial disputed that Turnbull suffered any ill-effects as a result of the USAir accident and suggested that Turnbull's disorders (if any) pre-dated the accident. If the jury believed USAir, then those disorders that pre-dated the accident were not reflected in the jury's award. Therefore, because the Social Security disability payments are based on a finding of "total disability," it is theoretically possible that many of the disorders that underlie the disability award from Social Security do not correspond to the disorders that underlie the jury award.

We conclude that *Oden* does not require USAir to prove a correspondence between the specific disorders on which the jury based its award of lost earnings and the specific disorders on which the SSA based its award of disability benefits. *Oden* requires a correspondence between *categories of loss:* under the facts of this case, USAir was re-

quired to show with reasonable certainty (1) that the judgment includes an award for damages that falls within a certain category of loss, and (2) that Turnbull receives collateral source payments that reimburse him for a corresponding category of loss that he suffered as a result of the USAir incident. We conclude that the "category of loss" is lost earnings, and that every dollar of the Social Security disability payments, paid in respect of a period for which the jury awarded lost earnings, is reimbursement to Turnbull for the same category of loss.

Several considerations support and reinforce our conclusion. First, the language of *Oden* itself repeatedly refers to "categories" of economic loss. Turnbull points to other language in *Oden*—references to "items" of loss, and the characterization of § 4545(c) as "suggest[ing] that a direct correspondence between the item of loss and the type of collateral reimbursement must exist before the required statutory offset may be made," *id.* at 87, 637 N.Y.S.2d at 672–73, 661 N.E.2d 142—and deduces that *Oden* requires USAir to demonstrate that "a specific item of loss matches or corresponds to a specific collateral source payment." But this argument overlooks the fact that *Oden* uses the words "items" and "categories" interchangeably. Indeed, the court's definitive reading of § 4545(c) is that it authorizes a reduction "only when the collateral source payment represents reimbursement for a particular *category* of loss that corresponds to a *category* of loss for which damages were awarded." *Id.* at 84, 637 N.Y.S.2d at 671, 661 N.E.2d 142 (emphasis added). It is therefore a mistake to interpret "items of loss" to mean something other than "categories of loss." Furthermore, § 4545(c) itself refers to categories of loss, such as "the cost of medical care, dental care, custodial care or rehabilitation services, [and] *loss of earnings* " to illustrate possible types of economic losses that may be matched for the purpose of offset against particular collateral sources. N.Y. C.P.L.R. § 4545(c) (McKinney 1992) (emphasis added).

*Oden* recognizes that it may not always be easy to align the collateral source payment with the award for economic loss, but sug-

gests that N.Y. C.P.L.R. § 4111(f), which "requires a detailed itemization of the elements included in the jury's damage award," would "operate to facilitate the task." *Oden*, 87 N.Y.2d at 89, 637 N.Y.S.2d at 674, 661 N.E.2d 142. We therefore turn to section 4111(f), which directs the court to instruct the jury to "specify the applicable elements of special and general damages upon which the award is based and the amount assigned to each element including, but not limited to, medical expenses, dental expenses, *loss of earnings,* impairment of earning ability, and pain and suffering." N.Y. C.P.L.R. § 4111(f) (McKinney 1992) (emphasis added). Section 4111(f), like § 4545(c), does *not* require a jury to determine the extent to which each specific disorder contributes to a particular loss.

Finally, the notion that a jury's award for economic loss must be broken down according to specific disorders assumes that losses *can* be apportioned in that way. Even if it would be useful to do so, no jury could approximate the percentage or dollar amount of Turnbull's lost earnings that is attributable to each of his symptoms and syndromes, his headaches, his impaired balance, his various psychological and motor deficits. Neither § 4545(c) nor *Oden* require the jury to undertake that work.

The district court therefore erred in denying USAir's motion to amend the final judgment to reflect an offset for Turnbull's past and future Social Security disability payments. The record shows that (1) the jury awarded Turnbull damages for all the loss of earnings he suffered as a result of the incident aboard USAir, and (2) Turnbull has received and will continue to receive Social Security disability payments that *also* reimburse that loss of earnings. The necessary correspondence is easily established where—as here—the collateral source payments are for total disability, and the jury award compensates the plaintiff for the same or similar deficits (not to mention that the onset date of both claims is the same). It is therefore "reasonably certain" that the Social Security disability payments correspond to a category of loss for which damages were also awarded. *See Caruso v. Russell P. LeFrois Builders,*

217 A.D.2d 256, 259, 635 N.Y.S.2d 367, 369 (4th Dep't 1995) (concluding that Social Security disability benefits were reasonably certain to replace future lost earnings).

It remains for the district court to determine the amounts of past and (relevant) future Social Security payments to Turnbull and any credit for premiums. However, Turnbull argues that if his award must be reduced at all, it should be reduced by no more than 20 percent—to reflect the jury's (implicit supposed) finding that the injury caused only 20 percent of Turnbull's total disability. Turnbull infers that the jury made this finding because (1) there was evidence that Turnbull earned $35,000 a year before the accident, and (2) the jury awarded him $70,000 for future lost earnings over ten years—*i.e.,* $7,000 per year, or 20 percent of his annual earnings. Therefore, Turnbull argues that only 20 percent of the Social Security disability payments can be deducted from the jury's award because "the Social Security payments were based upon a finding of total, or one-hundred percent (100%) disability, a portion of which (presumably 80%) was based upon conditions unrelated to the accident."

This argument is a more elaborate version of Turnbull's original argument, and our answer is the same: § 4545(c) and *Oden* require. USAir to prove a correspondence between *categories* of loss with reasonable certainty; USAir has met that burden by showing that the jury awarded Turnbull damages for lost earnings and that Turnbull receives Social Security disability payments that also reimburse him for that loss. Turnbull's argument—which invites unfounded speculation about the rationale for the jury's award—is rebutted by his own application for Social Security disability benefits.

■ Finally, Turnbull argues that the language of § 4545(c) requires evidence of collateral source payments to be admitted for consideration by the court at trial, not after the jury returns a verdict, that USAir in effect waived the collateral source argument by failing to introduce evidence of such payments at trial, and that USAir therefore is not entitled to a hearing on this issue now.

Turnbull bases this argument on his reading of § 4545, emphasizing that it provides that in "any *action*" where the plaintiff "*seeks to recover*" for economic loss, evidence of collateral source payments "*shall be* admissible." Turnbull therefore concludes that § 4545(c) contemplates resolution of the collateral source offset in a "currently pending action, not an action which has been terminated by a jury verdict in the plaintiff's favor."

This argument is also meritless. This case has not ceased to be "pending," and the statute's express statement that evidence of collateral source payments "shall be admissible *for consideration by the court*" does not preclude the introduction of evidence to the court in a post-trial hearing. On at least one occasion, New York's Appellate Division has (without comment) permitted a defendant to pursue a § 4545(c) offset following a jury verdict. *See Caruso*, 217 A.D.2d at 258, 635 N.Y.S.2d at 368; *see also Teichman v. Community Hosp. of Western Suffolk*, 205 A.D.2d 16, 19, 617 N.Y.S.2d 338, 340 (2d Dep't 1994) (noting that it is "apparent that the Legislature intended the statute to define an evidentiary rule which is to be applied only where the matter is tried and *a judgment in favor of a plaintiff has been 'awarded'*" (emphasis added)).

## CONCLUSION

We vacate the order denying USAir's motion to amend the judgment, and remand for the district court (i) to decide the total amount of past and future Social Security disability payments to Turnbull for the periods for which the jury awarded damages for lost earnings and (ii) to amend the judgment accordingly. Because USAir asks us to direct the district court to "determine the amounts of past and future Social Security payments (and the premium credit to be applied to arrive at the net offset)," we need not, and do not, decide whether Social Security taxes deducted from an employee's wages pursuant to the Federal Insurance Contributions Act, 26 U.S.C. § 3102, are "premiums" under § 4545(c).