[722 NYS2d 316]

BARBARA W. WISHOLEK et al., Respondents, v GARY DOUGLAS et al., Appellants. (Appeal No. 2.)

Fourth Department, March 21, 2001

## APPEARANCES OF COUNSEL

*Feldman Keiffer & Herman, L. L. P.,* Buffalo (*Ann W. Herman* of counsel), for The Health Care Plan, Inc., appellant.

*Mauro Goldberg & Lilling, L. L. P.,* Great Neck (*Barbara D. Goldberg* of counsel), for Gary Douglas, appellant.

*Stamm Reynolds Stamm,* Williamsville (*Gregory Stamm* of counsel), for Barbara Wisholek and another, respondents.

## OPINION OF THE COURT

PINE, J.

In this case we are called upon to determine, *inter alia,* whether Public Health Law § 4410 (1) precludes a health maintenance organization (HMO) from being held vicariously liable for physical injuries to Barbara W. Wisholek (plaintiff) that a jury found were caused by the negligence of a physician employed by the HMO who was acting within the scope of his employment and in furtherance of the business of the HMO. For the reasons that follow, we conclude that Public Health Law § 4410 (1) does not preclude such vicarious liability.

Plaintiff went to the emergency room at Buffalo General Hospital seeking treatment for an abscess on her buttocks. Plaintiff was treated by defendant Gary Douglas, M.D., an on-call physician employed by defendant The Health Care Plan, Inc. (HCP), plaintiff's health care provider and a qualified HMO. After the abscess was drained plaintiff developed complications, including cellulitis. She underwent two more surgeries performed by Dr. Douglas. Some weeks later she suffered further complications and was treated by a colorectal surgeon who performed additional surgeries. Plaintiff currently has a large scar on her buttocks where the abscess had been and has bowel incontinence caused by damage to her external sphincter.

The jury returned a verdict finding that Dr. Douglas was negligent, that his negligence was a substantial factor in bring-

ing about plaintiff's injuries, and that he was acting within the scope of his employment and in furtherance of the business of HCP. It further determined that HCP was negligent but that its negligence was not a substantial factor in bringing about plaintiff's injuries. The jury awarded plaintiff $230,000 for loss of earnings, pain and suffering, and emotional shock to the date of the verdict, and $3 million for future pain and suffering, and it awarded her husband $25,000 on his derivative cause of action.

■ We conclude that Supreme Court properly denied the pretrial motion of HCP to dismiss the complaint against it based on Public Health Law § 4410. Public Health Law § 4410, enacted in 1976, provides in relevant part:

> "1. The provision of comprehensive health services directly or indirectly, by a health maintenance organization through its comprehensive health services plan shall not be considered the practice of the profession of medicine by such organization or plan. However, each member, employee or agent of such organization or plan shall be fully and personally liable and accountable for any negligent or wrongful act or misconduct committed by him or any person under his direct supervision and control while rendering professional services on behalf of such organization or plan."

That section explicitly provides that an HMO is not engaged in the practice of medicine. We are not required to determine the effect of the statute on the direct liability of an HMO. With respect to the issue before us, the effect of the statute on the vicarious liability of an HMO, we conclude that nothing in the statute expressly bars an HMO from being held vicariously liable for the acts of its employees.

Assuming, arguendo, that the statute could be considered ambiguous, we nevertheless conclude that it does not bar vicarious liability. If "the intent of the lawmaking body is not clear," we must use traditional rules of statutory construction "to discover the true intention of the law" (McKinney's Cons Laws of NY, Book 1, Statutes § 91). One commentator concludes that even the direct liability of an HMO is not barred by the statute. He writes, "A review of the session notes surrounding passage of this law reveals no discussion of limiting medical malpractice liability. There was extensive discussion of how the health maintenance organizations were being formed, the application and certification processes, and the need for the

organizations to demonstrate financial responsibility" (Trueman, *As Managed Care Plans Increase, How Can Patients Hold HMOs Liable for Their Actions?*, 71 NY St BJ 6, 16 [Feb. 1999]). The overall intent of the Legislature was to remove regulatory impediments to the formation of HMOs and to decrease the cost of services (Public Health Law § 4400 *et seq.*, added by L 1976, ch 938). The commentator further writes, "Given the ambiguity of the section, it appears logical to assume that if the Legislature intended to take the monumental step of totally eliminating the right of a harmed individual to sue for damages caused by negligence, there would have been some discussion of the matter" (Trueman, *op. cit.*, at 16-17).

Vicarious liability of an employer for the acts of its employees is based on the principle of respondeat superior (*see,* 53 NY Jur 2d, Employment Relations, § 322, at 34). "The doctrine of *respondeat superior* is grounded on firm principles of law and justice. Liability is the rule, immunity the exception" (*Bing v Thunig*, 2 NY2d 656, 666). Statutes that seek to abolish common-law rights must be strictly construed (*see,* McKinney's, *op. cit.*, § 301 [a]; *see also, Oden v Chemung County Indus. Dev. Agency*, 87 NY2d 81, 86), and the common law must be "no further changed than the clear import of the language used in a statute absolutely requires" (McKinney's, *op. cit.*, § 301 [b]). Here, the statute does not explicitly preclude vicarious liability (*see,* Public Health Law § 4410; *see also,* Moore and Gaier, Medical Malpractice, *The Liability of Health Maintenance Organizations*, NYLJ, July 1, 1997, at 3, col 1). Therefore, we decline to hold that the statute precludes an HMO from being held vicariously liable for damages arising from the negligence of its employees.

We reject defendants' contention that the verdict is against the weight of the evidence. A jury verdict should not be set aside as against the weight of the evidence unless a jury could not have reached the verdict on any fair interpretation of the evidence (*see, Riggio v New Creation Fellowship*, 249 AD2d 942; *Nicastro v Park,* 113 AD2d 129, 134). Defendants presented expert medical testimony that conflicted with that presented by plaintiffs, and the jury was entitled to resolve any credibility issues against defendants. We further reject defendants' contention that the court should have refused to permit several witnesses to testify concerning the impact of the injuries of plaintiff on her life on the ground that such testimony was cumulative. "Whether evidence should be excluded as cumulative is a matter that rests within the sound

discretion of the trial court" (*Rosabella v Fanelli*, 225 AD2d 1007, 1008). Additionally, we reject defendants' contention that the court erred in refusing to admit in evidence the notes of HCP nurses. The uncertified notes were hearsay and did not come within any exception set forth in CPLR 4518.

The court properly refused to discharge a sworn juror. In order to discharge a sworn juror, the court must find that the juror is grossly unqualified and "be convinced that the juror's knowledge will prevent that person from rendering an impartial verdict" (*People v Anderson*, 70 NY2d 729, 730). The juror, who expressed concern because she received medical care at the same building where Dr. Douglas worked, stated unequivocally that she could be fair and impartial, and thus there was no basis to conclude that the juror was unable to render an impartial verdict.

Defendants failed to preserve for our review their contention that the court erred in using a general verdict sheet (*see, Schmidt v Buffalo Gen. Hosp.*, 278 AD2d 827; *see also, Williams v City of New York*, 240 AD2d 734, 736). Nor can it be said that the use of the general verdict sheet precluded review of the central issue of liability or that inclusion of an item of damages for emotional shock and distress constitutes a fundamental error warranting reversal in the absence of preservation (*see generally, Breitung v Canzano*, 238 AD2d 901, 902).

We conclude, however, that the award of $3 million for future pain and suffering is excessive (*see,* CPLR 5501 [c]; *Inya v Ide Hyundai*, 209 AD2d 1015; *Prunty v YMCA of Lockport*, 206 AD2d 911, 912). Plaintiff suffers from bowel incontinence, which has severely impacted her daily life. In our view, an award of $1.5 million for future pain and suffering is the maximum amount the jury could have found in this case as a matter of law (*see, Hafner v County of Onondaga* [appeal No. 2], 278 AD2d 799; *see, e.g., Kahl v Loffredo*, 221 AD2d 679; *Kwasny v Feinberg*, 157 AD2d 396, 399-400; *Schwartzberg v Kai-Shun Li*, 141 AD2d 530).

Accordingly, we conclude that the judgment should be modified by vacating the award of damages for future pain and suffering, and a new trial should be granted on damages for future pain and suffering only unless plaintiff, within 20 days of service of a copy of the order of this Court with notice of entry, stipulates to reduce the verdict for future pain and suffering to $1.5 million, in which event the judgment should be modified accordingly and as modified affirmed.

PIGOTT, JR., P. J., HAYES, KEHOE and BURNS, JJ., concur.

Judgment unanimously modified, on the law, and as modified affirmed, without costs, and new trial granted on damages for future pain and suffering only unless plaintiff Barbara W. Wisholek, within 20 days of service of a copy of the order of this Court with notice of entry, stipulates to reduce the verdict for future pain and suffering to $1.5 million, in which event the judgment is modified accordingly and as modified affirmed without costs in accordance with the opinion by PINE, J.