■ Nyon Sook Lee, as Executrix of the Estate of Bong Gill Lee, Deceased, Appellant, v Lawrence Shields, Respondent, et al., Defendants.—In a medical malpractice action to recover damages, *inter alia,* for wrongful death, the plaintiff appeals from a judgment of the Supreme Court, Kings County (Scholnick, J.) entered February 8, 1990, which upon an order of the same court entered December 6, 1989, granting the motion of the respondent, Lawrence Shields, pursuant to CPLR 4404 (a) for judgment as a matter of law in his favor notwithstanding the jury verdict, is in favor of the respondent and against him.

Ordered that the judgment is affirmed, with costs.

In January 1981 the plaintiff's decedent, Bong Gill Lee, began suffering from facial distortions—the right side of his face "drooped" and he could not close his right eye. On January 15, 1991, on the advice of his wife's obstetrician, Lee visited the respondent, Lawrence Shields, a neurologist. During the initial examination, Dr. Shields recorded Lee's blood pressure as 140 over 80 and diagnosed Lee's condition as "Bell's Palsy", a viral infection in which the facial muscles on one side of the face become weak and paralyzed and produce a distortion in facial movements. He instructed Lee to return for a follow-up appointment, and when Lee did so, Dr. Shields' associate, Dr. Irving Friedman, confirmed the diagnosis. Friedman found Lee's blood pressure to be within normal limits and prescribed an anti-inflammatory drug and physical therapy for Lee.

From February 7, 1981, to March 31, 1981, Lee was treated by a physical therapist for Bell's Palsy. On March 31, 1981, his last visit to the physical therapist, Lee's blood pressure was recorded as 150 over 80. Because his condition had not improved during therapy, the physical therapist recommended that he return to Dr. Shields. However, Lee did not return to Dr. Shields. On April 5, 1981, he suffered a pontine hemorrhage (a stroke in his brain stem), after which his blood pressure readings at the hospital were 200 over 110 and 170 over 100, which are hypertensive. On April 9, 1981, he died as a result of the pontine hemorrhage.

The plaintiff subsequently brought this action against Dr. Shields and others, alleging, *inter alia*, that Dr. Shields negligently failed to diagnose Lee as hypertensive in January 1981 and that his failure to do so was the proximate cause of Lee's pontine hemorrhage. At trial, the plaintiff offered the testimony of Dr. Sidney Cohen, a board-certified neurologist. Dr. Cohen, who did not treat Lee, testified that a blood pressure reading of 140 over 80 is "borderline hypertensive", and concluded that Lee was hypertensive when he saw Dr. Shields in January 1981. He further stated that Lee's pontine hemorrhage was the result of hypertension, and that had Shields properly diagnosed Lee and recommended a preventive course of treatment and management of his blood pressure (i.e., through diet, weight loss, etc.), Lee's pontine hemorrhage would have been prevented. Dr. Cohen's conclusion that Lee suffered from hypertension was not based on any medical diagnosis, but on a statement by the physical therapist to Dr. Shields in a letter dated after Lee's January 15, 1981, appointment with Dr. Shields. Cohen's conclusion was also based on information given to him that Lee had tested his own blood pressure on a device in a store and found it to be high, and that Lee's friend, an acupuncturist, had told Lee that his blood pressure was high.

Dr. Robert April, a neurologist who testified for Dr. Shields, stated that a blood pressure of 140 over 80 was normal, and that Lee was not hypertensive at the time he was seen by the respondent. He also testified that, rather than hypertension causing the pontine hemorrhage, Lee's pontine hemorrhage was *the cause* of the high blood pressure readings recorded subsequent to the pontine hemorrhage.

The jury returned a verdict in favor of the plaintiff, finding Dr. Shields liable for Lee's death. The court, however, granted Dr. Shields' motion for judgment notwithstanding the verdict,

stating that the plaintiff failed to show that Shields departed from accepted medical practice, resulting in Lee's death. The plaintiff appeals from that judgment, arguing that the court improperly granted Dr. Shields' motion and seeking to have the jury verdict reinstated.

We conclude that the court properly entered judgment in Dr. Shields' favor. " 'It is settled and unquestioned law that opinion evidence must be based on facts in the record or personally known to the witness' " *(Hambsch v New York City Tr. Auth.,* 63 NY2d 723, 725, quoting *Cassano v Hagstrom,* 5 NY2d 643, 646; *Interstate Cigar Co. v Dynaire Corp.,* 176 AD2d 699, 700). An expert may rely on out-of-court material if it is accepted in the profession as reliable in forming a professional opinion or if it comes from a witness subject to full cross-examination *(Hambsch v New York City Tr. Auth., supra,* at 726). An expert may not reach a conclusion by assuming material facts not supported by the evidence, and may not guess or speculate in drawing a conclusion *(Interstate Cigar Co. v Dynaire Corp., supra,* at 700).

In establishing that Lee suffered from hypertension at the time he saw Dr. Shields, and that it was the cause of his pontine hemorrhage, the plaintiff relied upon the testimony of Dr. Cohen. Dr. Cohen's testimony, however, was not based on facts in the record or personally known to him. The physical therapist testified that his statement that Lee was known to be hypertensive was based on an assumption that a medical diagnosis had been made. Lee's friend, the acupuncturist, did not testify at the trial, and there was no indication of how he determined that Lee's blood pressure was high or if he was qualified to make such a determination. Further, no evidence was offered as to the reliability of the machine with which Lee allegedly self-tested his blood pressure. Therefore, we find, as a matter of law, that the plaintiff failed to establish that Lee had a history of hypertension and that he was suffering from hypertension when he saw Dr. Shields in January 1981 *(see, Hambsch v New York City Tr. Auth.,* 63 NY2d 723, *supra).* As a result, the plaintiff could not establish the requisite elements of proof in a medical malpractice action, i.e., a deviation or departure from accepted practice and evidence that that departure was a proximate cause of the injury *(Amsler v Verrilli,* 119 AD2d 786). Thus, "there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial" *(Cohen v Hallmark Cards,* 45 NY2d 493, 499; *see also, Nicastro v Park,* 113 AD2d

129, 132). Thompson, J. P., Bracken, Lawrence and Miller, JJ., concur.