■ RALPH VERGARA, Appellant-Respondent, v SCRIPPS HOWARD, INC., et al., Defendants, and ROCKWELL INTERNATIONAL CORPORATION, Respondent-Appellant. (And a Third-Party Action.) [691 NYS2d 392] —Order, Supreme Court, Bronx County (Jerry Crispino, J.), entered on or about March 6, 1998, denying Rockwell International Corporation's (Rockwell) motion pursuant to CPLR 4404 (a) for judgment notwithstanding the

verdict or a new trial, except to the extent of setting aside the jury's award of $620,000 for past pain and suffering and $1,040,000 for future pain and suffering, and ordering a new trial on the issue of damages unless plaintiff stipulated to accept damages of $200,000 for past pain and suffering and $500,000 for future pain and suffering, and the interlocutory judgment, same court and Justice, entered on or about October 15, 1998, determining the issue of liability in favor of plaintiff and against Rockwell and staying the new trial on damages pending resolution of the instant appeal, unanimously reversed, on the law, without costs, Rockwell's motion granted, and the complaint dismissed. The Clerk is directed to enter judgment in favor of defendant-respondent-appellant dismissing the complaint as against it.

Plaintiff, then an employee of third-party defendant The New York Times (Times),* sustained serious permanent injuries to his leg and back on July 21, 1989, when his trousers were caught by a tray on a conveyor for bundled newspapers at the Times's printing plant in Carlstadt, New Jersey. The conveyor track, which was moving at 250 feet per minute, pulled plaintiff into the press machinery. The accident happened because the Times had removed the protective metal guards with which the machine was originally designed, manufactured and installed. The absence of a barrier between the worker and the fast-moving track made it possible for plaintiff's clothes to snag on one of the connected trays that made up the track of the conveyor belt.

At the time of the accident, there were three such conveyor machines in the room where plaintiff was working. They were known as Loop A, Loop B and Loop C. Each was rectangular in shape and between 250 and 300 feet long. Plaintiff was injured on Loop B. Loops A, B and C were manufactured and installed in the late 1970s (1976, 1977 and 1978, respectively) by the Sta-Hi Systems Division of Sun Chemical Company (Sun), subsequently known as the Sequa Corporation. Defendant Rockwell bought the Sta-Hi Division from Sun in 1978. As originally manufactured, Loop B included guard fences on each side along the entire length of the track. These guards were about one foot high and made of diamond-shaped metal mesh grid welded onto the machine. The openings were made too small for workers' clothing or body parts to slip through.

* The third-party claims against the Times were not tried together with the main action that is the subject of this appeal. All defendants and third-party defendants other than Rockwell have been dismissed from this litigation.

Though aware that the purpose of the guard fence was to protect workers from coming into contact with the track for safety reasons, the Times removed a section of the guard in 1978 or 1979 to alleviate a jamming problem near one of the bundle entry devices. Initially, it replaced the original guard with three horizontal steel bars, but at some point prior to plaintiff's accident (apparently around 1984), the Times even took this makeshift barrier down and left this section of the track completely unshielded. Needless to say, this is where plaintiff's accident occurred.

Plaintiff could not sue the Times directly because the Workers' Compensation Law provides the exclusive remedy for workplace injury, including one caused by an employer's negligence. Therefore, plaintiff sought to hold Rockwell and related entities liable, based on an alleged failure to warn the Times of the danger of removing the safety guards. Following a verdict in plaintiff's favor, the trial court ordered a new trial on damages unless plaintiff stipulated to a reduced amount, and denied Rockwell's motion to set aside the verdict pursuant to CPLR 4404 (a). Plaintiff appeals from the court's ruling on damages and Rockwell cross-appeals from the denial of its motion for judgment notwithstanding the verdict or a new trial.

There is no doubt that plaintiff's accident was caused by negligence, but it was the negligence of his employer, not of Rockwell, whose connections to the altered machine were too attenuated to support liability under any of the theories presented by plaintiff. The common flaw in all of plaintiff's arguments is that plaintiff simply failed to prove that Rockwell had notice of the dangerous modification. A defendant can hardly have a duty to warn about a hazard of which it is unaware (*see, Schumacher v Richards Shear Co.,* 59 NY2d 239, 249). "Unfortunately, as this case bears out, it may often be that an injured party, because of the exclusivity of workers' compensation, is barred from commencing an action against the one who exposes him to unreasonable peril by affirmatively rendering a safe product dangerous. However, that an employee may have no remedy in tort against his employer gives the courts no license to thrust upon a third-party manufacturer a duty to insure that its product will not be abused or that its safety features will be callously altered by a purchaser" (*Robinson v Reed-Prentice Div.,* 49 NY2d 471, 481).

Rockwell cannot be held liable simply because it is a successor to the corporation that manufactured the Loop B conveyor. Successor liability is premised on the successor corporation's superior knowledge of the risk of personal injury created by

operating the machine without proper safeguards. As the buyer of the manufacturer's assets, the successor is expected to be familiar with the product (*Schumacher v Richards Shear Co.*, *supra*, at 243). Here, however, the dangerous condition arose *after* the product left the manufacturer, due to its modification by the Times. Nor is this a case where the buyer's potentially unsafe modification was foreseeable because the safety feature was designed to be removable (*compare*, *Lopez v Precision Papers*, 67 NY2d 871, 873). Testimony at trial established that the original metal mesh safety guard was welded onto the machine and required substantial effort to remove (*see*, *Liriano v Hobart Corp.*, 92 NY2d 232, 241 [noting that "a safety device built into the integrated final product is often the most effective way to communicate that operation of the product without the device is hazardous"]).

Since Rockwell's notice of the modification could not be presumed based on its predecessor's manufacture of the conveyor, a duty to warn the Times could only be premised on Rockwell's subsequent discovery of the dangerous alteration through the visits of Rockwell's employee Robert Eckerson, a mechanical engineer, who responded to sporadic service calls from the Times, and helped design the newspaper bundle conveyor known as Loop C. The majority of the trial evidence on liability centered on this theory. The jury's implicit finding that Eckerson had notice of the hazard, and that his failure to warn the Times caused plaintiff's terrible accident, is not supported by sufficient evidence. In other words, because of serious factual gaps in the plaintiff's proof, there is "no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Cohen v Hallmark Cards*, 45 NY2d 493, 499).

Rockwell's motion to set aside the verdict was based on the argument that the verdict was against the weight of the evidence. Were we to base our decision on that ground, the remedy would be a new trial, since "weight of the evidence" reversal does not mean that there are no triable issues, only that the jury incorrectly assessed the evidence (*Nicastro v Park*, 113 AD2d 129). By contrast, when a verdict is set aside as not based on sufficient evidence as a matter of law, the complaint must be dismissed (*Cohen v Hallmark Cards*, *supra*, at 498).

The trial evidence showed that there was no contract between Rockwell and the Times for routine, system-wide inspection and maintenance of the newspaper bundle conveyors. Rockwell was only called sporadically during the late 1970s

and early 1980s to respond to specific problems with the conveyors, for which it sent Eckerson (*see, McMurray v P.S. El.,* 224 AD2d 668, 669-670, *lv denied* 88 NY2d 811 [error to allow jury to infer negligent maintenance when defendant had no duty to inspect machine as a whole]). Eckerson also surveyed the conveyor room in 1978 in connection with designing Loop C. Loop C was set up to pass over Loop B at certain points.

However, plaintiff presented no proof that Eckerson had actual notice, and not enough facts from which constructive notice could be inferred. There was no evidence as to which parts of Loop B were examined by Eckerson on these visits or how close they were to the relatively small section where the Times had removed the wire mesh guard (*see, De Milio v De Milio,* 24 AD2d 447, 448 [verdict for plaintiff set aside absent details about nature and visibility of defect, without which jury could not infer defendants' notice of defect and resulting duty to warn]).

Constructive notice requires that a defect be visible and apparent for a reasonable length of time (*Gordon v American Museum of Natural History,* 67 NY2d 836, 837). The Times replaced the original protective mesh with three horizontal pieces of flat steel piping. Thus, there was no vertical protrusion above the surface of the conveyor track, which would have altered the silhouette of the machine in a way that would necessarily have attracted Eckerson's attention even if he were working on a different section of the machine. It is worth reiterating that Loop B was between 250 and 300 feet long, and that it was housed in a huge room with two other conveyors of similar size. Finally, at the time of plaintiff's accident, there was no guard at all on the portion of the track where he was injured. The three metal bars had been removed, apparently around 1984. It is not even clear from the record whether Eckerson was still responding to service calls from the Times by this date.

Weighing somewhat in plaintiff's favor is the fact that when Eckerson was called to design Loop C, the Times requested a type of safety guard different from the wire mesh that had caused jamming problems on Loop B. Yet, plaintiff's entire case cannot rest on this fact alone. Although knowledge may be imputed to Rockwell that the Times was dissatisfied with the original safety guard, this does not mean that Eckerson was told that the Times had actually removed the existing mesh on Loop B, nor that Eckerson knew what alternate safety device (if any) the Times had put in its stead. In short, there

was insufficient proof for a rational juror to conclude that Eckerson saw (or should have seen) the dangerous condition which caused plaintiff's accident.

Plaintiff's expert's testimony that Eckerson must have had notice because a thorough engineer would have inspected the entire machine was mere speculation unsupported by any direct evidence (*Shapiro v Hotel Corp.*, 25 AD2d 828). The jury wrongly afforded it more weight than Eckerson's testimony that he never saw the alteration (*Trestman v Richard L. Heimer, P. E., P. C.*, 163 Misc 2d 987, 988 [verdict set aside where jury wrongly credited expert's speculation over defense witness' direct observation]), especially when no such duty to inspect existed (*McMurray v P.S. El.*, *supra*).

In light of the foregoing, we need not address the parties' other contentions. Concur—Sullivan, J. P., Rosenberger, Tom and Wallach, JJ.