CONSTANTINE TSATSAKIS, Respondent, v BOOTH MEMORIAL MEDICAL CENTER et al., Appellants, et al., Defendants. [829 NYS2d 646]—

In an action, inter alia, to recover damages for medical malpractice, the defendant Booth Memorial Medical Center appeals, and the defendant Kay Rosmarin, sued herein as Kaye Rosemarin, separately appeals, as limited by their briefs, from so much of a judgment of the Supreme Court, Queens County (Weiss, J.), entered October 26, 2004, as, upon the denial of their separate motions pursuant to CPLR 4401, made at the close of the plaintiff's case, to dismiss the complaint insofar as asserted against them for failure to make out a prima facie case and, upon a jury verdict finding the defendant Kay Rosmarin 60% at fault for the plaintiff's injuries and the defendant Booth Memorial Medical Center 40% at fault, and upon awarding the

plaintiff the principal sum of $2,056,000, is in favor of the plaintiff and against them. Justice Dillon has been substituted for former Justice Luciano (*see* 22 NYCRR 670.1 [c]).

Ordered that the judgment is reversed, on the law and the facts, with one bill of costs, the motion of the defendant Booth Memorial Medical Center pursuant to CPLR 4401 to dismiss the complaint insofar as asserted against it for failure to make out a prima facie case is granted, the complaint is dismissed insofar as asserted against the defendant Booth Memorial Medical Center, that branch of the motion of the defendant Kay Rosmarin, sued herein as Kaye Rosemarin, pursuant to CPLR 4401 which was to dismiss the claim alleging professional negligence based on the absence of a code leader for failure to make out a prima facie case is granted, the action is severed as to the defendant Kay Rosmarin, sued herein as Kaye Rosemarin, and the matter is remitted to the Supreme Court, Queens County, for a new trial on liability and damages on the claim alleging professional negligence in failing to timely administer electric shocks as to the defendant Kay Rosmarin, sued herein as Kaye Rosemarin.

The plaintiff was involved in a motorcycle accident in Greece on August 30, 1986, causing injuries to his spine and rendering him a paraplegic. He had spinal surgery in Greece, but after complications arose, he came to the United States to receive treatment for his condition at the defendant Booth Memorial Medical Center (hereinafter the hospital). On October 3, 1986, the plaintiff underwent surgery at the hospital to reinstall steel rods in his spine. The defendant Kay Rosmarin, sued herein as Kaye Rosemarin, was the attending anaesthesiologist during the surgery.

After Rosmarin completed the anesthesia induction and endotracheal intubation, the plaintiff went into ventricular tachycardia, a condition where the heart beats very quickly. Shortly thereafter, the plaintiff experienced ventricular fibrillation, also known as cardiac arrest. At trial, the plaintiff's expert witnesses testified that the hospital and Rosmarin deviated from accepted medical practices by, inter alia, failing to have an appropriate code leader in place who could handle the plaintiff's cardiac arrest, which departure substantially caused the plaintiff's injuries. The plaintiff's experts additionally testified that Rosmarin departed from good and accepted medical practice in failing to immediately shock the plaintiff three times in succession after the plaintiff was in cardiac arrest, and that this delay of treatment was a substantial factor in causing the alleged injuries.

The jury found that both the hospital and Rosmarin departed from good and accepted medical practices by "failing to ensure that a recognizable code leader or code team leader was in charge to run the cardiac code" and that this departure was a substantial factor in causing the plaintiff's injury. The jury also found that Rosmarin departed from good and accepted medical practice "by not shocking the plaintiff three (3) times, in quick succession, after the plaintiff developed ventricular fibrillation" and that this departure was a substantial factor in causing the plaintiff's injury. The jury attributed 60% of fault to Rosmarin and 40% to the hospital, and awarded the plaintiff damages in the principal sum of $2,056,000.

On the evidence presented at trial, there was no valid line of reasoning and permissible inferences which could possibly have led a rational jury to conclude that the absence of a code leader during the plaintiff's surgery was a proximate cause of the plaintiff's injuries (see Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]; Taylor v Martorella, 35 AD3d 722 [2006]; Nyon Sook Lee v Shields, 188 AD2d 637, 639 [1992]; Nicastro v Park, 113 AD2d 129, 132 [1985]). Accordingly, no liability could be attributed to Rosmarin and the hospital for failing to ensure that a code leader was in charge. Since this was the only basis of liability against the hospital, the motion for dismissal of the complaint insofar as it is asserted against the hospital should have been granted (see Spitzer v Ciprut, 80 AD2d 891 [1981]). Similarly, that branch of Rosmarin's motion which was for dismissal of the claim alleging professional negligence based on the absence of a code leader should have been granted.

The judgment in favor of the plaintiff was, in part, based upon the jury's finding that Rosmarin deviated from good and accepted medical practice by not timely shocking the plaintiff three times in succession after the plaintiff developed ventricular fibrillation. The Supreme Court, however, should not have permitted the plaintiff's expert witness, Rebecca Twersky, to testify at trial as to this and other issues. Twersky was retained on behalf of the plaintiff some time between 1994 and 2002. The trial commenced on November 17, 2002, and Twersky's identification as an expert witness was not disclosed until December 2, 2002, two weeks after jury selection had commenced. Expert disclosure is of particular importance in medical malpractice actions given their heightened reliance on expert testimony (see Meyer v Zeichner, 263 AD2d 597 [1999]; Tleige v Troy Pediatrics, 237 AD2d 772, 774 [1997]). While CPLR 3101 (d) (1) (i) vests courts with discretion to allow experts to testify "for good cause shown," here, the Supreme Court improvidently

exercised its discretion in admitting the testimony, as the plaintiff failed to establish "good cause" for failing to exchange a proper disclosure as to Twersky within a reasonable time after she had been retained. Accordingly, Rosmarin is entitled to a new trial on the plaintiff's claim against her alleging professional negligence in failing to timely administer electric shocks.

In light of our determination, the appellants' remaining contentions are rendered academic. Ritter, J.P., Fisher, Lifson and Dillon, JJ., concur.