OPINION OF THE COURT
Geoffrey J. O’Connell, J.
Counsel for the plaintiff seeks an order vacating the dismissal of the action and restoring it to the trial calendar. The defendants oppose.
It is acknowledged by the movant that a certification order was issued by the undersigned on February 10, 2006 which directed that the plaintiff was to file a note of issue within 90 days or the “action is dismissed without further order of the Court. (CPLR § 3216).” This order was acknowledged by counsel appearing on that date on behalf of the plaintiff. (Motion exhibit 1.) It is further conceded that the plaintiff did not file a note of issue within that 90 days. Plaintiff acknowledges receipt of a “Note of Issue Reminder” from the County’s Administrative Judge, dated April 24, 2006, which reminded plaintiff, specifically, that the note of issue was due on or before May 10, 2006, and which again warned the plaintiff that a failure to file the note of issue would result in dismissal of the action pursuant to CPLR 3216. (Motion exhibit 4.)
This order further warned any plaintiff that if the action were to be dismissed pursuant to CPLR 3216, any plaintiff seeking relief of that dismissal would have to bring a motion to vacate the default together with “proof of reasonable excuse for non-compliance and a meritorious cause of action. See Longacre Corp. v Better Hosp. Equip. Corp., 228 AD2d 653 [1996].” (Motion exhibit 4.)
Counsel for plaintiff states that he served the defendants with a stipulation on April 26, 2006 requesting that they consent to him filing a note of issue. That stipulation was not signed.
Plaintiffs counsel concedes that he did not file the note of issue, nor did he move to extend the time to file. He states that he was in Nepal safeguarding his daughter during a Maoist uprising at the time of the dismissal. Counsel states that he did not learn of the dismissal until his return in August.
Counsel states that upon learning of the dismissal he immediately acted to make a motion to vacate the default and restore the matter, and sought to obtain a written affidavit from an expert to support the merits of the malpractice claim. He *489 argues that his unexpected trip out of the country to assist his daughter, and his concern for responding to outstanding discovery demands, constitute a reasonable excuse for the default. Counsel for plaintiff claims that the failure to move earlier was due solely to law office failure and does not reflect any defect in the case or demonstrate fault of the plaintiff. Further, he claims that his client has a meritorious cause of action.
With his application plaintiff provides a medical affirmation from Dr. Roger M. Rose, a board certified otolaryngologist, who states that he reviewed the plaintiffs medical records and the transcripts of both the plaintiff and Dr. Zelman. In his conclusion, Dr. Rose opines that with a reasonable degree of medical certainty “Dr. Zelman departed from accepted standards of medical care in his surgery of Mrs. Sturgess in May 2002 and that this negligence was the proximate cause of the damage to Mrs. Sturgess’ facial nerve and the resulting partial paralysis.” (Motion exhibit 15, at 3.)
However, in his analysis the doctor does not set forth the exact departure in the surgery, only a deficiency in Dr. Zelman’s notes. More specifically, Dr. Rose states that “Dr. Zelman’s dictated operative report does not describe any effort to identify and protect this lower branch of the Facial Nerve.” Dr. Rose notes however that Dr. Zelman states that he did take such precautions in his deposition and that no damage was done to the nerve at the time of surgery. Dr. Rose states that since the facial weakness was seen very shortly after the plaintiff left the operating room, he believes that the nerve was injured. (Motion exhibit 15, at 2.)
To restore a matter to the trial calendar pursuant to CPLR 3404, after a year has passed from it being marked off, a plaintiff must demonstrate (1) a reasonable excuse for the failure to timely restore; (2) a meritorious cause of action; (3) a lack of intent to abandon; and (4) lack of prejudice to the opposing party. (Basetti v Nour, 287 AD2d 126 [2d Dept 2001]; Neidereger v Hidden Park Apts., 306 AD2d 392 [2d Dept 2003].) In this instance counsel for plaintiff has failed to make the requisite showing of merit.
The plaintiff must submit an affidavit of a medical expert setting forth that expert’s opinion that the defendant did not, in fact, follow good and accepted medical practice. (See, Mosberg v Elahi, 80 NY2d 941 [1992].) The plaintiff must demonstrate not only a deviation or departure from accepted practice by defendants, but also evidence that such departure was a *490 proximate cause of the injury. (Amsler v Verrilli, 119 AD2d 786 [2d Dept 1986].) An affidavit of a medical expert stating an opinion that defendant was negligent and that negligence harmed plaintiff, when accompanied by the specific factors used as the basis of that opinion, is sufficient. (Menzel v Plotnick, 202 AD2d 558 [2d Dept 1994].) The expert witness must possess the requisite skill, training, knowledge, or experience to ensure that an opinion rendered is reliable. (Matott v Ward, 48 NY2d 455 [1979].)
Plaintiffs expert, an otolaryngologist, states that the plaintiff has permanent paralysis in her right lower face. He describes the marginal mandibular branch of the facial nerve as enervating the lower lip. The expert avers that the course of that particular nerve is well defined and that during surgery in its vicinity measures must be taken to protect and preserve it. He acknowledges that the defendant claims that the particular nerve was not damaged during the surgery. Nevertheless plaintiffs expert concludes that the defendant departed from accepted standards of care based solely on the fact that the weakness plaintiff experienced in her lower right jaw following the surgery was consistent with an injury to the marginal mandibular branch of the facial nerve.
No specific deviation from good and accepted medical standards is identified other than the expert’s conclusion that the marginal mandibular branch of the facial nerve was injured during the surgery. Under certain circumstances the doctrine of res ipsa loquitur may be applied in a case where medical malpractice is alleged and the specific mechanism of injury is unknown, or at least unknown to the plaintiff. (States v Lourdes Hosp., 100 NY2d 208, 212 [2003]; Kambat v St. Francis Hosp., 89 NY2d 489, 495 [1997] [see n].) Reliance upon the doctrine of res ipsa loquitur is only permitted where a plaintiff establishes: (1) the event is one that does not ordinarily occur in the absence of negligence; (2) it was caused by an agency or instrumentality within the defendant’s exclusive control; and (3) no voluntary act on the part of the plaintiff contributed to its happening. (Dermatossian v New York City Tr. Auth., 67 NY2d 219, 226 [1986].) Plaintiff, as an anesthetized patient, could not have contributed to the happening of any injury and defendant Zelman was in exclusive control of the surgical instruments while operating.
As to the remaining prerequisite, “In an increasingly sophisticated society such as ours, it is not at all surprising that mat *491 ters entirely foreign to the general population are commonplace within a particular profession or specially trained segment of society.” (States v Lourdes Hosp., 100 NY2d 208, 213 [2003].) For this reason expert testimony may be relied upon in attempting to satisfy the common experience prerequisite to application of the res ipsa loquitur doctrine. Plaintiffs expert, however, never addresses the question whether the injury which he asserts occurred during surgery is one that does not ordinarily occur in the absence of negligence. (See, Falotico v Frankel, 232 AD2d 607 [2d Dept 1996].) While the expert affidavit need not conform to any precise formulation or use any “magic words,” it must, at least in substance, assert that, within the particular profession or community of specially trained persons, the occurrence would be considered more likely than not to be the product of a deviation from the appropriate standard of care. (See, McElroy v Albany Mem. Hosp., 332 F Supp 2d 502 [ND NY 2004].) Here, there is no statement from the expert as to the specific precautions that would have prevented plaintiffs injuries nor even that, if proper precautions were taken to protect the nerve, the injury would not have occurred. (Tucker v Elimelech, 184 AD2d 636 [2d Dept 1992]; Nyon Sook Lee v Shields, 188 AD2d 637 [2d Dept 1992].)
Although the defendant denied that the marginal mandibular branch of the facial nerve was damaged during the surgery, he testified at his deposition that the nerve is at risk during the surgical procedure because of the need to manipulate adjacent structures. He further testified that a brief period of weakness to the nerve is not uncommon following the surgical procedure in question. Under such circumstances one would expect a plaintiffs expert to directly address whether the marginal mandibular branch of the facial nerve might be injured during surgery of this type even in the absence of negligence. This is particularly true where, as here, the expert also opines, in support of a claim of lack of informed consent, that the risk of injury to the nerve in question was of sufficient magnitude that a patient needs to be advised of it.
Parenthetically, as noted by the defendant, the plaintiffs verified bill of particulars alleges that her injuries are to her trigeminal nerve, not the marginal mandibular nerve.
The period of delay was relatively short and there is little apparent prejudice to the defendants. Under such circumstances law office failure by a plaintiffs counsel might be excused. (See, Giordano v Vanchieri & Perrier, 16 AD3d 621 [2d Dept 2005].) *492 However, the plaintiff, relying upon her expert, has failed to demonstrate the existence of a meritorious claim of medical malpractice. The court recognizes that where reliance is placed upon res ipsa loquitur to raise an issue of fact requiring a plenary resolution, not a great deal is demanded. (See, Morejon v Rais Constr. Co., 7 NY3d 203, 212 [2006].) Nevertheless, a plaintiff must offer some proof in evidentiary form that the event would not ordinarily occur in the absence of negligence. Accordingly, plaintiffs motion with respect to the malpractice claim is denied.
As to plaintiffs cause of action for lack of informed consent, the motion is not supported by an affidavit from plaintiff. The complaint was verified by counsel pursuant to CPLR 3020 (d) (3). The hospital record contains a surgical consent form signed by plaintiff. During her deposition plaintiff did not deny that she signed the consent form or that she discussed the possible risks of surgery with the defendant Zelman. She merely denied a recollection of having done so. Plaintiffs motion with respect to the lack of informed consent claim is denied.
With respect to defendant Winthrop University Hospital, plaintiffs expert does not state that there was any departure from accepted medical practice or other negligence on the part of any hospital employee or other person for whom the hospital would be vicariously liable. Plaintiffs motion is denied as to Winthrop University Hospital.