SHANNON REILLY et al., Appellants, v JERRY G. NINIA et al., Respondents. [917 NYS2d 652]—

In an action, inter alia, to recover damages for medical malpractice, etc., the plaintiffs appeal from a judgment of the Supreme Court, Suffolk County (Whelan, J.), entered November 18, 2009, which, upon a jury verdict in favor of the defendants and against them, and upon an order of the same court dated September 8, 2009, denying their motion pursuant to CPLR

4404 (a) to set aside the verdict as contrary to the weight of the evidence and for a new trial, is in favor of the defendants and against them dismissing the complaint.

Ordered that the judgment is modified, on the law and the facts, by deleting the provision thereof dismissing the complaint insofar as asserted against the defendant St. Charles Hospital and Rehabilitation Center; as so modified, the judgment is affirmed, with one bill of costs to the defendants Jerry G. Ninia, and Dr. Jerry Ninia OB-GYN, PLLC, doing business as Island Obstetrics and Gynecology Center, payable by the plaintiffs, and one bill of costs to the plaintiffs payable by the defendant St. Charles Hospital and Rehabilitation Center, that branch of the plaintiffs' motion pursuant to CPLR 4404 (a) which was to set aside the verdict in favor of the defendant St. Charles Hospital and Rehabilitation Center is granted, the complaint is reinstated insofar as asserted against that defendant, the order dated September 8, 2009, is modified accordingly, and the matter is remitted to the Supreme Court, Suffolk County, for a new trial against that defendant.

The trial court correctly denied that branch of the plaintiffs' motion pursuant to CPLR 4404 (a) which was to set aside the jury's verdict in favor of the defendants Jerry G. Ninia, and Dr. Jerry Ninia OB-GYN, PLLC, doing business as Island Obstetrics and Gynecology Center (hereinafter together the Ninia defendants). The jury could have reached its verdict in favor of the Ninia defendants based on a fair interpretation of the evidence (*see Lolik v Big V Supermarkets*, 86 NY2d 744, 746 [1995]; *Abdelkader v Shahine*, 66 AD3d 615 [2009]; *Lovett v Interfaith Med. Ctr.*, 52 AD3d 578, 580 [2008]; *Ballas v Occupational & Sports Medicine of Brookhaven, P.C.*, 46 AD3d 498 [2007]; *Nicastro v Park*, 113 AD2d 129, 133 [1985]). The plaintiffs Danni Ann Reilly and Frank Reilly testified at trial that, after the labor and delivery nurse left the room where Danni Ann Reilly was to deliver the plaintiff Shannon Reilly, the nurse returned with Ninia within one to three minutes. Based on this testimony, the jury could have found that Ninia did not depart from good and accepted medical and obstetrical practice because he timely returned to the room after the nurse informed him that there was difficulty with respect to the delivery of the baby.

However, the trial court erred in denying that branch of the plaintiffs' motion pursuant to CPLR 4404 (a) which was to set aside the jury's verdict in favor of the defendant St. Charles Hospital and Rehabilitation Center (hereinafter the hospital), as the verdict in favor of the hospital was contrary to the weight of the evidence.

Where the plaintiffs and defendants present expert testimony in support of their respective positions, it is the province of the jury to determine the experts' credibility (see *Lovett v Interfaith Med. Ctr.*, 52 AD3d at 580; *Landau v Rappaport*, 306 AD2d 446 [2003]). A court must not interfere with a jury's fact-finding process merely because it disagrees with its findings or would have evaluated the witnesses' credibility differently and reached a contrary determination. Only where the evidence so preponderates in favor of the unsuccessful litigant that the verdict "could not have been reached on any fair interpretation of the evidence" (*Lolik v Big V Supermarkets*, 86 NY2d at 746) should a motion to set aside a jury verdict as contrary to the weight of the evidence be granted (see *Abdelkader v Shahine*, 66 AD3d at 616; *Cholewinski v Wisnicki*, 21 AD3d 791, 791 [2005]; *Bobek v Crystal*, 291 AD2d 521, 522 [2002]; *Nicastro v Park*, 113 AD2d at 136).

In the case at bar, the plaintiffs' expert testified, among other things, that the labor and delivery nurse employed by the hospital departed from good and accepted obstetrical practice in seven different ways: she failed to (1) notify Ninia that an intrauterine pressure catheter (hereinafter IUPC) was not working from approximately 8:00 P.M. until 8:27 P.M., on November 1, 2002, the date Shannon Reilly was born, (2) notify Ninia of decelerations in the fetal heart rate which were "nonreassuring," which occurred between 8:04 P.M. and approximately 8:45 P.M., (3) reapply an external monitor on Danni Ann Reilly's abdomen when the IUPC stopped working, (4) reposition Danni Ann Reilly onto her left side at any time after approximately 8:05 P.M., (5) timely provide oxygen to Danni Ann Reilly commencing at approximately 8:05 P.M., (6) provide Danni Ann Reilly with extra fluids commencing at approximately 8:05 P.M., and (7) timely discontinue the drug Pitocin, which is used to induce and enhance labor, commencing shortly after 8:00 P.M. It is undisputed that Danni Ann Reilly sustained a uterine rupture and that Shannon Reilly was born with cerebral palsy.

Ninia agreed that the labor and delivery nurse departed from accepted practice by failing to notice that the IUPC had stopped working and failing to notify him that the IUPC had stopped working. He further testified that the nurse should have notified him of a deceleration of the fetal heart rate occurring at approximately 8:20 P.M. that lasted for approximately three minutes, even if the nurse believed that the tracings printed from the fetal heart rate monitor were ambiguous. Thus, Ninia, who at the time of the trial was the hospital's director of obstetrics and gynecology, conceded that the nurse had departed

from good and accepted practice and, thus, credibly testified against the interest of his own hospital (*cf. Cicione v Meyer*, 33 AD3d 646 [2006]).

The hospital's obstetrical expert testified, inter alia, that there were no departures by the hospital from good and accepted practice, because the labor and delivery nurse, during the time the IUPC was not working, was measuring Danni Ann Reilly's contractions by hand and analyzing the fetal heartbeat from the audible sounds emanating from the fetal heart rate monitor. He further asserted, alternatively, that the strips printed by the monitor were inaccurately measuring the fetal heartbeat, that the monitor was "time-averaging" the fetal heart rate, or that the strips were "not interpretable." Thus, the expert averred that it was not necessary for the labor and delivery nurse to notify Ninia that the IUPC had malfunctioned and that there had been a nonreassuring fetal heart tracing, to reapply the external monitor, to reposition Danni Ann Reilly, or to provide her with oxygen and extra fluids. However, there was no evidence presented at the trial that the labor and delivery nurse had in fact listened to the sounds emanating from the monitor or had measured Danni Ann Reilly's contractions by hand. Furthermore, the labor and delivery nurse did not testify at the trial, and a deposition of the nurse taken in 2006 was not offered into evidence or in any way used by either the plaintiffs or the defendants during their direct cases. Accordingly, the conclusions reached by the hospital's expert assumed facts not supported by the evidence, were not based on any facts in the record or personally known by the witness, and were not supported by facts fairly inferable from the evidence (*see Hambsch v New York City Tr. Auth.*, 63 NY2d 723, 725 [1984]; *Cassano v Hagstrom*, 5 NY2d 643, 646 [1959]; *Nyon Sook Lee v Shields*, 188 AD2d 637, 639 [1992]; *cf. Overeem v Neuhoff*, 254 AD2d 398, 399 [1998]). "An expert opinion grounded on a nonexistent fact is not significantly probative" (*Borges ex rel. S.M.B.W. v Serrano-Isern*, 605 F3d 1, 8 [2010]). The testimony of the hospital's obstetrical expert was based on "mere speculation unsupported by any direct evidence" (*Vergara v Scripps Howard*, 261 AD2d 302, 307 [1999]).

Furthermore, the hospital's expert testified that he "would have to think about" whether the administration of Pitocin should have been discontinued at the time of the three-minute deceleration of the fetal heartbeat, and, responded "maybe" to a similar question as to whether the Pitocin should have been discontinued. Thus, with respect to the claim that the labor and delivery nurse departed from good and accepted practice by fail-

ing to discontinue the administration of Pitocin, the hospital's expert credibly testified against the hospital's interest (*cf. Cicione v Meyer*, 33 AD3d at 646).

As the hospital's case was premised in large measure on opinion evidence which, in turn, was based on allegations of fact that were not supported by the trial record, we must conclude that the evidence preponderated in favor of the plaintiffs, and that their evidentiary position was particularly strong compared to that of the hospital. Therefore, substantial justice has not been done, the jury could not have reached its verdict in favor of the hospital on any fair interpretation of the evidence, and the verdict was, thus, contrary the weight of the evidence.

There is no merit to the hospital's contention that the plaintiffs' case was dependent on establishing the time the uterine rupture occurred. In any event, the jury determined only that there were no departures by the hospital from good and accepted practice. The issue of the timing of the uterine rupture relates to proximate cause, which the jury did not reach in light of its verdict (*see Nicastro v Park*, 113 AD2d at 131).

As there will be a new trial with respect to the hospital, we observe that the trial court correctly determined several evidentiary issues that arose during the trial. The trial court correctly determined that the former director of the hospital's Department of Obstetrics and Gynecology could not be compelled to provide expert testimony. That doctor was not named as a defendant, had no role whatsoever in the treatment of the mother and baby in this case, and was not subject to any liability in this case (*see Jones v Cummings*, 55 AD3d 677, 678-679 [2008]; *Piervinanzi v Bronx Cross County Med. Group*, 244 AD2d 396, 396-397 [1997]; *Fristrom v Peekskill Community Hosp.*, 239 AD2d 315 [1997]; *cf. Latiff v Wyckoff Hgts. Hosp.*, 144 AD2d 650 [1988]; *Wilson v McCarthy*, 57 AD2d 617 [1977]). The trial court also correctly prohibited the plaintiffs from attempting to impeach the hospital's expert with a medical journal article which the expert had not accepted as authoritative (*see People v Rose*, 41 AD3d 742, 743 [2007]; *Lipschitz v Stein*, 10 AD3d 634, 635 [2004]; *Labate v Plotkin*, 195 AD2d 444, 445 [1993]). Finally, the trial court providently exercised its discretion in permitting the plaintiffs to use one excerpt from the deposition transcript of the labor and delivery nurse, but in precluding the use of an additional excerpt in cross-examining the hospital's obstetrical expert, as the plaintiffs could and should have elicited testimony concerning the issue addressed by the precluded excerpt during the direct examination of the plaintiffs' obstetrical expert (*see Feldsberg v Nitschke*, 49 NY2d 636 [1980]; *Pryce v Gilchrist*, 51

AD3d 425, 426 [2008]). Florio, J.P., Dickerson, Chambers and Lott, JJ., concur.