■ JAMES KIKER, as Administrator of the Estate of GRACE

KIKER, Deceased, Respondent, v NASSAU COUNTY, Appellant, et al., Defendants.—In a medical malpractice action to recover damages for wrongful death, the defendant Nassau County appeals from (1) an order of the Supreme Court, Nassau County (Molloy, J.), dated July 7, 1989, which denied, with leave to renew, its motion to set aside the verdict, (2) an order of the same court, dated September 18, 1989, which directed entry of judgment against it in the principal sum of $325,000, (3) a judgment of the same court, dated September 22, 1989, which, upon a jury verdict, is in favor of the plaintiff and against it in the principal sum of $325,000, and (4) an order of the same court, dated January 10, 1991, which denied its renewed motion to set aside the jury verdict.

Ordered that appeals from the orders dated July 7, 1989, and September 18, 1989, are dismissed; and it is further,

Ordered that the judgment is affirmed; and it is further,

Ordered that the order dated January 10, 1991, is affirmed; and it is further,

Ordered that the plaintiff is awarded one bill of costs.

The appeals from the intermediate orders must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action (see, Matter of Aho, 39 NY2d 241, 248). The issues raised on appeal from those orders are brought up for review and have been considered on the appeal from the judgment (see, CPLR 5501 [a] [1]).

On August 7, 1980, the plaintiff's decedent Grace Kiker was admitted to the Nassau County Medical Center for the repair of an incisional hernia, located in the umbilicus area. She underwent surgery on August 8, 1980, without the administration of an enema or any other treatment to relieve her bowels. During the postoperative period, Mrs. Kiker complained of constipation and abdominal pain. The various treatments administered in an attempt to relieve her of constipation were ineffective, and her condition worsened. On August 12, at approximately 7:00 A.M., Mrs. Kiker was examined, and the doctor's impression was "Patient constipated with a history of diverticulitis. Rule out ruptured diverticulum". An X-ray of Mrs. Kiker's abdomen was taken at approximately 10:28 A.M. The report indicated the presence of free peritoneal air, and that, "correlation [is] needed to determine whether this is residual from previous surgery or represents a new perforation". By midday, Mrs. Kiker was classified "NPO" (nothing by mouth), a tube was placed through her nose into her stomach to relieve the distention in her stomach, her blood

was typed and crossed, and antibiotic therapy was commenced. In the evening, a sigmoidoscopy was performed, and a hypaque enema study was done to determine if the free air in the abdomen was from the operation or from a perforation. At around noon on August 13, 1980, Mrs. Kiker went into septic shock and was transferred to the intensive care unit. She underwent emergency surgery on August 13, 1980, at 5:20 P.M., and died the following day from ruptured diverticulum in the sigmoid area. At the time of her death, Mrs. Kiker was 51 years of age. She was divorced and had five children, ages 15, 19, 23, 27 and 32, respectively.

The plaintiff thereafter commenced the instant action against the defendants, alleging, *inter alia,* that they departed from good and accepted medical and surgical practice in failing to take a proper history of the decedent, including her history of chronic constipation, failing to monitor and promptly diagnose her condition after the August 8, 1980, surgery, and delaying the surgery for the ruptured diverticulum until August 13, 1980. They further alleged that the defendants had negligently failed to note Mrs. Kiker's constipation during admission and treat the same before the August 8, 1980, operation. After a trial, the jury returned a verdict in favor of the plaintiff, and awarded the principal sum of $325,000 in damages for wrongful death.

On appeal, the defendants contend that the verdict was against the weight of the evidence. A verdict in favor of a plaintiff should not be set aside as against the weight of the credible evidence unless the preponderance in favor of the defendant was so great that the finding in favor of the plaintiff could not have been reached upon a fair interpretation of the evidence (*see, Moffatt v Moffatt,* 86 AD2d 864, *affd* 62 NY2d 875; *O'Boyle v Avis Rent-A-Car Sys.,* 78 AD2d 431, 439). Upon our review of the record, we find that the jury's verdict is amply supported by the evidence adduced at the trial. While there was conflicting expert testimony as to whether the administration of enemas was standard practice in an incisional hernia operation, in view of Mrs. Kiker's history of constipation, and pre-operative records indicating constipation problems upon admittance for the August 8, 1980, surgery, the jury was entitled to accept the opinion of the plaintiff's expert, that the failure to investigate or relieve Mrs. Kiker of her constipation represented a departure from good and accepted medical and surgical practice and was one of the contributing causes of her death (*see, Dunham v Village of Canisteo,* 303 NY 498, 504; *Koster v Greenberg,* 120 AD2d

644, 645; *Mortensen v Memorial Hosp.,* 105 AD2d 151, 158). Furthermore, it cannot be said that the jury's determination, to the effect that the defendant's delay in diagnosing and treating Mrs. Kiker's post-operative condition was a departure from accepted medical practice and was not a mere error of judgment, could not have been reached by a fair interpretation of the evidence *(see, Pike v Honsinger,* 155 NY 201, 209).

There is similarly no merit to the defendant's contention that the jury's award of $325,000 grossly exceeded the pecuniary losses sustained by Mrs. Kiker's children. There was sufficient proof adduced at trial of the children's pecuniary losses to support the amount of the award. The testimony of the children who testified at trial, indicated that Mrs. Kiker had provided financial support for the two minor children, and provided them with her services as a homemaker *(see, DeLong v County of Erie,* 89 AD2d 376, 386, *affd* 60 NY2d 296). Additionally, there was evidence that Mrs. Kiker had provided all the children, including the adult children, with parental guidance and advice, as well as nurture and care *(see, Gonzalez v New York City Hous. Auth.,* 161 AD2d 358, *affd* 77 NY2d 663; *Korman v Public Serv. Truck Renting,* 116 AD2d 631, 632), and those benefits were properly considered by the jury *(see, Tilley v Hudson Riv. R. R. Co.,* 24 NY 471; *Koster v Greenberg, supra,* at 644, 646).

Contrary to the defendants' contention, the summation remarks made by counsel for the plaintiff did not warrant a mistrial. Counsel's suggestion of an appropriate award was not improper *(see, Tate v Colabello,* 58 NY2d 84, 87; *cf., Vassura v Taylor,* 117 AD2d 798, 799). While the remaining remarks which are objected to on appeal were better left unsaid, the defendants were not prejudiced thereby, since the court immediately provided curative instructions, and further provided supplemental instructions in accordance with the defense counsel's request.

We have examined the defendants' remaining contentions and find them to be without merit. Bracken, J. P., Eiber, Miller and Ritter, JJ., concur.