[848 NYS2d 200]

MERRYL KIHL, Respondent, v KARL O. PFEFFER, Defendant, and COUNTY OF NASSAU, Appellant.

Second Department, November 27, 2007

### APPEARANCES OF COUNSEL

*Lorna B. Goodman, County Attorney*, Mineola (*Karen Hutson* and *Dennis J. Saffran* of counsel), for appellant.

*Richard M. Kenny* (*Trolman, Glaser & Lichtman, P.C.*, New York City [*Michael T. Altman*] of counsel), for respondent.

### OPINION OF THE COURT

DILLON, J.

The instant appeal provides us with an occasion to discuss in detail the "reasonable certainty" evidentiary standard of CPLR 4545 (c) that governs collateral source hearings, as decisional authority on the subject is sparse.

### I. Relevant Facts

During the early morning hours of a rainy January 13, 1995, the plaintiff Merryl Kihl was riding in the front passenger seat of a vehicle owned and operated by the defendant Karl O. Pfeffer. As Pfeffer proceeded along Quaker Meeting House Road in Farmingdale at approximately 30 miles per hour, the car hydroplaned off the road and crashed into a tree, causing Kihl to sustain fractures to her ankle and C2 vertebra. Subsequently, Kihl commenced this action against Pfeffer, as well as the defendant County of Nassau, alleging as the bases for recovery Pfeffer's negligent operation of the vehicle and the County's negligent road design. Prior to trial, in an order dated August 26, 2004, the Supreme Court determined that the County was

collaterally estopped from arguing that the road was not negligently designed based upon prior decisions of this Court in *Furino v County of Nassau* (299 AD2d 519 [2002]) and *Zawacki v County of Nassau* (299 AD2d 542 [2002]). After a trial on the issue of liability, the jury found, on October 21, 2004, that the negligence of both Pfeffer and the County were substantial factors contributing to the accident's occurrence, and apportioned 13% of fault to Pfeffer and 87% of fault to the County.

At the trial on damages, evidence was presented that after the accident, Kihl was transported to a hospital where her ankle was casted and her neck stabilized with a "halo device," the fixation of which was very painful. The following two months, Kihl relied on the care of her future husband's family, who assisted her with her personal needs such as bathing and using the bathroom. During that time, she relied on a wheelchair to ambulate before graduating to a walker. Subsequently, the fractures to her ankle and C2 vertebra healed, and Kihl was able to return to college, graduate, and obtain a job. However, the pain in her neck persisted, and she also experienced occipital headaches and numbness around her face and neck, which she attempted to treat with medications such as Vicodin and Soma. She saw a chiropractor and acupuncturist, but found no relief. After seeing a spine specialist, Kihl opted for spinal fusion surgery, which involved removing the disc between the C2/C3 vertebrae and replacing it with bone from her hip. However, the surgery only worsened her condition. Kihl then began seeing a pain management specialist who treated her pain with epidural steroid injections, cortisone shots, physical therapy, cervical rhizotomies, and a combination of narcotics, analgesics, and muscle relaxants.

When the pain management treatments also proved unsuccessful in alleviating her pain, Kihl resorted to the implantation of a morphine pump into her abdominal wall which delivered medication directly to her spine. At the time of trial, the morphine pump was expected to remain inside her for the rest of her life. The pump causes a visibly prominent protrusion at Kihl's lower left abdomen. She will be required to have the pump replaced every four or five years which, over the course of her lifetime, should result in 9 or 10 surgeries. She was also taking 1,600 milligrams of Actiq, a fast-acting oral narcotic typically reserved for end-stage cancer patients, six to eight times a day, along with antidepressants, and Ambien. The side effects of the medicine included severe constipation, gastrointestinal

distress, and decreased production of estrogen. The high-dose medications rendered her unable to conceive or bear more children. Kihl had difficulty sleeping, was unable to concentrate for long periods of time, which prevented her from working in a sedentary job, and on some days was unable to get out of bed. Her doctors opined that her pain was intractable and unremitting, and that it would increase over time.

On November 4, 2004, the jury returned a verdict on damages, awarding Kihl the sums of $625,000 for past pain and suffering, $128,400 for past medical expenses, $266,678 for past loss of earnings, $1,200,000 for future pain and suffering intended to compensate Kihl for 46 years of future life expectancy, $1,020,569 for future medical expenses other than medication over 46 years, $7,416,045 for future medication expenses over 46 years, $1,100,000 for future lost earnings over 18.25 years, $374,436 for future housekeeping services over 46 years, and $673,612 for a future patient care assistant over 15 years commencing at age 65.

By post-trial motion dated November 19, 2004, the County sought an order pursuant to CPLR 4404 (a) setting aside the jury verdict on the issue of liability and for judgment as a matter of law or, in the alternative, setting aside the verdict as against the weight of the evidence and for a new trial on the issue of liability. In the same motion, the County sought an order setting aside the damages award as to pain and suffering on the ground of excessiveness, and as to loss of earnings, future medical expenses other than medication, future medication expenses, future housekeeping services, and for a future patient care assistant as against the weight of the evidence, i.e., that there was insufficient proof at trial that such expenses had been or would be incurred, and on the ground of excessiveness. Kihl opposed the motion. In an order dated March 11, 2005, the Supreme Court denied the County's post-trial motion in all respects. The County also separately moved for a post-trial collateral source hearing pursuant to CPLR 4545 (c) to reduce the jury's $7,416,045 award for future medication expenses. The collateral source application was granted to the extent that a hearing was conducted on April 21, 2005.

Kihl's husband, Brian Finnell, was the only witness to testify at the collateral source hearing. On direct examination, Finnell testified that he was a nine-year employee of Cook Hall & Hyde, as an insurance salesman. Through his employment, Finnell and Kihl were insured by United Health Care (United), which

covered Kihl's Actiq morphine "lollipops." However, under this plan, Finnell was required to pay an annual family deductible of $500, plus a monthly $50 copayment for the Actiq morphine lollipops. On cross-examination, Finnell testified that he was an at-will employee, and that colleagues holding similar positions at his company had been laid off "often" in recent years. He also stated that it was not his intention to remain with his employer for the duration of his career, as he instead intended to pursue less stressful work in a warmer climate that would make his wife more comfortable. According to Finnell, he had been covered by three different insurance providers during his nine years of employment, and the terms of his benefits had changed each year. If terminated from employment, Finnell would be entitled to no health benefits beyond COBRA. He explored obtaining private health insurance, but learned that his wife is uninsurable. Finnell described his marriage as "difficult," as Kihl is in constant pain, which leaves little time for her to devote to him. At the conclusion of the testimony, the County introduced into evidence pharmacy records reflecting Kihl's Actiq prescriptions and copayments.

In an order dated July 11, 2005, the Supreme Court denied the County's request to reduce the jury award for future medication expenses, finding that the County had failed to meet its burden of establishing that Finnell's health benefits will, with reasonable certainty, be available to replace or indemnify the award. Specifically, the court found that on the basis of Finnell's testimony, there were "far too many risks and hardships in the plaintiff's future to establish with 'reasonable certainty' that her future medical costs [would] be covered by her husband's policy of insurance." The court, mindful that its determination would "be permanent," stated that an "unwarranted reduction" in the jury's future medication expense award could result in Kihl being unable to receive the care and treatment that the jury determined she would need.

The Supreme Court executed a judgment on October 21, 2005, which was entered on November 3, 2005, reflecting the jury's damages award with no provision for any collateral source reduction, other than stipulated reductions for certain past economic losses. The County appeals from the portions of the judgment which awarded damages for past pain and suffering and future pain and suffering on the ground of excessiveness, future housekeeping services, and a future patient care assistant as against the weight of the evidence, and future medication expenses to the extent not reduced by a collateral source setoff.

For reasons set forth below, we affirm the judgment in all contested respects.

## II. Past and Future Pain and Suffering

■ The amount of damages to be awarded for personal injuries is primarily a question of fact for the jury (*see Taylor v Martorella*, 35 AD3d 722, 724 [2006]; *Wallace v Stonehenge Group, Ltd.*, 33 AD3d 789, 790 [2006]; *Vaval v NYRAC, Inc.*, 31 AD3d 438 [2006]; *Kravitz v City of New York*, 300 AD2d 362, 363 [2002]; *Mogil v Gorgone*, 225 AD2d 674, 675 [1996]). Only when an award "deviates materially from what would be reasonable compensation" is a new trial on damages granted (CPLR 5501 [c]; *see Paruolo v Yormak*, 37 AD3d 794, 795 [2007]; *Sanchez v Kronengold*, 33 AD3d 607, 608 [2006]; *Vaval v NYRAC, Inc.*, 31 AD3d 438 [2006]; *Robles v City of New York*, 31 AD3d 734 [2006]; *Pitera v Winzer*, 18 AD3d 457, 457-458 [2005]; *Miller v Weisel*, 15 AD3d 458, 459 [2005]).

Upon consideration of the nature and extent of the injuries sustained by Kihl as a result of the accident (*see Sanchez v Kronengold*, 33 AD3d at 608; *Fryer v Maimonides Med. Ctr.*, 31 AD3d 604, 605 [2006]; *Pitera v Winzer*, 18 AD3d at 457-458; *Crockett v Long Beach Med. Ctr.*, 15 AD3d 606, 607 [2005]; *Quackenbush v Gar-Ben Assoc.*, 2 AD3d 824, 825 [2003]), we find that the jury's award for past pain and suffering does not deviate materially from what would constitute reasonable compensation (*see Lewis v Port Auth. of N.Y. & N.J.*, 8 AD3d 205, 206 [2004]; *Diaz v West 197th St. Realty Corp.*, 290 AD2d 310, 312 [2002]; *Tuitt v Midwood Auto Rental & Leasing Corp.*, 269 AD2d 525 [2000]; *Barrowman v Niagara Mohawk Power Corp.*, 252 AD2d 946, 948 [1998]).

The jury's award for future pain and suffering also did not deviate materially from what would constitute reasonable compensation (*see* CPLR 5501 [c]; *Kirby v Turner Constr. Co.*, 286 AD2d 618 [2001]; *Barrowman v Niagara Mohawk Power Corp.*, 252 AD2d at 948), given the plaintiff's persistent and significant pain, physical restrictions, 46-year life expectancy, the effect of her injuries in interacting with her spouse and child, the side effects of medications, the loss of her ability to bear more children, the visible protrusion of her morphine pump, and the need for 9 to 10 future surgeries under general anesthesia to replace her morphine pump.

### III. Housekeeping and Patient Care Expenses

██ The County argues that the jury's award for future housekeeping expenses is against the weight of the evidence on the ground that Kihl failed to present evidence that a housekeeper was needed or as to what tasks a housekeeper would perform. Household chores were being performed, according to the evidence, by Kihl's husband, neighbors, and family, and Kihl occasionally would prepare meals.

A jury's verdict should not be set aside as against the weight of the evidence unless the evidence preponderates so heavily in favor of the moving party that the verdict could not have been reached on any fair interpretation of the evidence (*see Lolik v Big V Supermarkets*, 86 NY2d 744, 746 [1995]; *Artusa v Costco Wholesale*, 27 AD3d 499, 500 [2006]; *Salim v Gomez*, 20 AD3d 410 [2005]; *Harris v Marlow*, 18 AD3d 608, 610 [2005]; *Bobek v Crystal*, 291 AD2d 521, 522 [2002]; *Nicastro v Park*, 113 AD2d 129, 133-134 [1985]). Great deference is to be accorded the fact-finding function of the jury as it had the responsibility of resolving any dispute as to the weight to be accorded to evidence, and as to the credibility of the witnesses (*see Stylianou v Calabrese*, 297 AD2d 798, 799 [2002]; *Conforti v Gaeta*, 190 AD2d 772, 773 [1993]; *Tarantino v Vanguard Leasing Co.*, 187 AD2d 422, 423 [1992]; *Nicastro v Park*, 113 AD2d at 133-134).

Here, Kihl's husband, Finnell, testified that while he performed the majority of defined household chores, he desired to hire a housekeeper but could not afford one. Kihl's vocational rehabilitation expert, Dr. Richard Shuster, testified that Kihl required a housekeeper, especially while her son was young, for approximately 20 to 30 hours per week, and for only 10 to 15 hours per week upon the son's reaching adolescence. Without factoring inflation, Shuster's estimated projected housekeeping services total as much as $517,140, yet the jury's verdict for future housekeeping services was only $374,436. Future damages for the loss of household services is a quantitative economic loss separate and apart from pain and suffering (*see Schultz v Harrison Radiator Div. Gen. Motors Corp.*, 90 NY2d 311, 320-321 [1997]). On this record, the jury's verdict awarding damages for future household services was not against the weight of the evidence (*see Presler v Compson Tennis Club Assoc.*, 27 AD3d 1096, 1096-1097 [2006]; *Tuitt v Midwood Auto Rental & Leasing Corp.*, 269 AD2d 525 [2000]; *Nicastro v Park*, 113 AD2d at 133-134).

The County argues that it is contradictory for the jury to award Kihl damages for the cost of a patient care assistant

needed as a result of future deteriorating health, commencing at age 65, while at the same time awarding damages for future pain and suffering over the full 46-year life expectancy suggested by the latest federal statistics. However, we find no evidence in the record that Kihl's physical condition and lifestyle, necessitating a patient care assistant in the future, would, in fact, decrease her life expectancy. Indeed, a theory of the County's defense as to future damages was that Kihl had sufficiently recovered and was able to live a normal life without need of assistants. The jury's verdicts are therefore not contradictory (*see Blyskal v Kelleher*, 171 AD2d 718, 718-719 [1991]).

## IV. Collateral Source Hearing as to Future Medication Costs

At common law, jury verdicts cannot be reduced by the amount of payments made to a plaintiff from collateral sources (*see Healy v Rennert*, 9 NY2d 202, 207-208 [1961]; *Lehr v City of New York*, 16 AD2d 702 [1962]). The theory behind the common-law rule is that defendants not be permitted to receive the benefit of a plaintiff's independent receipt of medical expense or wage reimbursements (*see Kish v Board of Educ. of City of N.Y.*, 76 NY2d 379, 384 [1990]). New York followed the common-law rule against collateral source setoffs until a series of statutory amendments to CPLR 4010 were enacted in 1975 and 1981, and to its successor statute, CPLR 4545, in 1984, 1985, and 1986 (*see Bryant v New York City Health & Hosps. Corp.*, 93 NY2d 592, 605-606 [1999]; *Ryan v City of New York*, 79 NY2d 792, 794-795 [1991]).

An exception to the common-law rule against collateral source setoffs first appeared in 1975 in the realm of medical malpractice, as a means of dealing with the crisis that had developed in the medical malpractice insurance industry (*see* CPLR 4545 [a]; *Oden v Chemung County Indus. Dev. Agency*, 87 NY2d 81, 85 [1995]; *Humbach v Goldstein*, 229 AD2d 64, 67-68 [1997]). Exceptions to the common-law rule were expanded in 1984 to past work-related personal injury and wrongful death awards against public employers (*see* CPLR 4545 [b], as added by L 1984, ch 701, § 2) and, ultimately, to "any action" for personal injury, property damages, or wrongful death where damages have been awarded for past or future economic loss (CPLR 4545 [c], as added by L 1986, ch 220, § 36). The ultimate purpose of CPLR 4545, as currently constituted, is to prevent plaintiffs from receiving double recoveries for economic loss (*see Bryant v New York City Health & Hosps. Corp.*, 93 NY2d at 607; *Oden v*

*Chemung County Indus. Dev. Agency*, 87 NY2d at 88; *Ryan v City of New York*, 79 NY2d at 794; *Humbach v Goldstein*, 229 AD2d at 67-68; Mem of Assembly Rules Comm, 1984 NY Legis Ann, at 251-252).

This action, arising out of neither medical malpractice (*see* CPLR 4545 [a]) nor work-related public employment (*see* CPLR 4545 [b]), is governed by the broad provisions of subdivision (c) of CPLR 4545. CPLR 4545 (c) provides, in relevant part:

> "In any action brought to recover damages for personal injury, injury to property or wrongful death, where the plaintiff seeks to recover for the cost of medical care, dental care, custodial care or rehabilitation services, loss of earnings or other economic loss, evidence shall be admissible for consideration by the court to establish that any such past or future cost or expense was or will, with reasonable certainty, be replaced or indemnified, in whole or in part, from any collateral source . . . If the court finds that any such cost or expense was or will, with reasonable certainty, be replaced or indemnified from any collateral source, it shall reduce the amount of the award by such finding, minus an amount equal to the premiums paid by the plaintiff for such benefits for the two-year period immediately preceding the accrual of such action and minus an amount equal to the projected future cost to the plaintiff of maintaining such benefits."

Because CPLR 4545 (c) is in derogation of the common law, its provisions must be strictly construed (*see Oden v Chemung County Indus. Dev. Agency*, 87 NY2d at 86; *Young v Tops Mkts.*, 283 AD2d 923, 926 [2001]; McKinney's Cons Laws of NY, Book 1, Statutes § 301 [a]).

The moving defendant bears the burden of establishing an entitlement to a collateral source reduction of an award for past or future economic loss (*see Oden v Chemung County Indus. Dev. Agency*, 87 NY2d at 89; *Kastick v U-Haul Co. of W. Mich.*, 292 AD2d 797, 798 [2002]; *Young v Knickerbocker Arena*, 281 AD2d 761, 764 [2001]; *Faas v State of New York*, 249 AD2d 731, 733 [1998]; *Adamy v Ziriakus*, 231 AD2d 80, 86 [1997]). The standard of proof, as set forth twice in the plain language of the statute, is that of "reasonable certainty" (CPLR 4545 [c]). Reasonable certainty is understood as involving a quantum of proof that is greater than a preponderance of evidence but less than

proof beyond a reasonable doubt (*id.*). Each of the four judicial departments has interpreted "reasonable certainty" as akin to the clear and convincing evidence standard, that the result urged by the defendant be "highly probable" (*Quezada v O'Reilly-Green*, 24 AD3d 744, 746 [2d Dept 2005]; *Ruby v Budget Rent A Car Corp.*, 23 AD3d 257, 258 [1st Dept 2005]; *Sternfeld v Forcier*, 248 AD2d 14, 16 [3d Dept 1998]; *Caruso v LeFrois Bldrs.*, 217 AD2d 256, 258-259 [4th Dept 1995]).

The reasonable certainty test necessarily implicates a two-tiered evaluation of defendants' collateral source proof. First, defendants must establish with reasonable certainty that the plaintiff has received, or will receive, payments from a collateral source. Such payments may illustratively include, but are not limited to, homeowner's insurance in property damage actions (*see Fisher v Qualico Contr. Corp.*, 284 AD2d 495, 496 [2001]), and in actions involving personal injury or death, disability pension payments received in lieu of future lost pension benefits (*see Boshnakov v Board of Educ. of Town of Eden*, 277 AD2d 996 [2000]), disability retirement payments in lieu of lost future ordinary pension benefits (*see Oden v Chemung County Indus. Dev. Agency*, 87 NY2d at 89), health insurance benefits not subject to any lien payable by the plaintiff (*see Panattoni v Inducon Park Assoc.*, 247 AD2d 823, 824 [1998]), certain Social Security benefits (*see* CPLR 4545 [c]; *Bryant v New York City Health & Hosps. Corp.*, 93 NY2d at 608; *Hayes v Normandie LLC*, 306 AD2d 133, 134 [2003]; *Manfredi v Preston*, 246 AD2d 580 [1998]; *Caruso v LeFrois Bldrs.*, 217 AD2d at 258-259), and workers' compensation benefits not subject to liens upon the plaintiff (*see* CPLR 4545 [c]; *Jenkins v Meredith Ave. Assoc.*, 238 AD2d 477, 479 [1997]). Reasonable certainty for future collateral source payments also requires an affirmative finding by the court that a contract or other enforceable agreement entitles the plaintiff to the ongoing receipt of such benefits, conditioned only upon the continued future payment of premiums and other financial obligations required by the agreement (*see* CPLR 4545 [c]).

The second step of a defendant's proof under the reasonable certainty standard is that collateral source payments which have been or will be received by the plaintiff must be shown to specifically correspond to particular items of economic loss awarded by the trier of fact (*see Iazzetti v City of New York*, 94 NY2d 183, 187 [1999]; *Bryant v New York City Health & Hosps. Corp.*, 93 NY2d at 607; *Oden v Chemung County Indus. Dev.*

*Agency*, 87 NY2d at 83; *Fisher v Qualico Contr. Corp.*, 284 AD2d at 495-496; *Boshnakov v Board of Educ. of Town of Eden*, 277 AD2d at 996; *Shue v Red Cr. Cent. School Dist.*, 266 AD2d 899, 900 [1999]; *Krum v Green Is. Constr. Co.*, 249 AD2d 730, 730-731 [1998]; *Manfredi v Preston*, 246 AD2d at 580; *Adamy v Ziriakus*, 231 AD2d at 87). The match of an award for past or future economic loss on the one hand, and offsetting collateral source payments on the other, is consistent with the strict construction accorded to CPLR 4545, and assures that any reductions to an award for economic loss are limited to the prevention of "double recoveries" by plaintiffs as intended by the legislature (*see Oden v Chemung County Indus. Dev. Agency*, 87 NY2d at 88).

Here, Finnell's health insurance coverage from United, which paid for Kihl's Actiq morphine lollipops except to the extent of an annual family deductible and monthly copayments, is a collateral source within the scope and intent of CPLR 4545 (c) (*see generally Brewster v Prince Apts.*, 264 AD2d 611, 618 [1999]; *Panattoni v Inducon Park Assoc.*, 247 AD2d at 824). United's health insurance coverage corresponds with the jury's specific award of damages for Kihl's future medication expenses. In examining the evidence of this collateral source, the Supreme Court applied the proper "reasonable certainty" test in denying the County any offset against the jury's award for future medication expenses.

The question before us is whether, as the County maintains on appeal, the evidence established with reasonable certainty that Kihl would continue receiving health coverage toward her future medication expenses, warranting a collateral source reduction. We find that the Supreme Court's denial of the collateral source reduction requested by the County was proper, and should be affirmed. We do so on the basis of five factors.

The first factor is the lack of reasonable certainty that Finnell will remain for 46 years with his current employer, through whom his health insurance is obtained. Finnell's testimony suggested otherwise; namely, that various colleagues had been terminated from their employment with the same company, and that he intended to transition into a less stressful career in a warmer climate that would be more comfortable for his wife. Kihl's receipt of future collateral source benefits is not within her own control, but rather, is wholly dependent upon the continued employment of her husband (*see Giventer v Rementeria*, 184 Misc 2d 744, 748 [2000]). As noted by the Supreme Court, in the event of a collateral source reduction, the family

would be compelled to sacrifice its career and geographic aspirations by forcing Finnell never to change jobs in order to maintain insurance coverage (*id.*). While the intent of the incremental amendments to CPLR 4545 was to prevent "double recoveries" for economic losses (*see e.g. Bryant v New York City Health & Hosps. Corp.*, 93 NY2d at 607), they were not meant to enslave a health care beneficiary to a particular employer or insurance provider.

A second factor is the uncertainty of whether Finnell's health benefits would, in fact, indefinitely cover any portion of the particular medication expenses that Kihl will incur. The hearing evidence demonstrated that the identity of Finnell's health care provider had changed three times in nine years and that the benefits package had changed each year.

A third factor is that Finnell and Kihl would need to remain married for Kihl to be continuously named as a dependent beneficiary on her husband's health insurance. Here, Finnell testified without contradiction that the spousal relationship was strained by Kihl's unremitting pain and her inability to devote sufficient attention to him.

Fourth, no evidence was adduced at the hearing as to Finnell's life expectancy or work-life expectancy, upon which Kihl's health care coverage is dependent.

Fifth, Kihl was otherwise uninsurable. Absent Finnell's continued employment, combined with a health benefits package that covered the cost of the Actiq morphine lollipops or a portion thereof, Kihl would be unable to obtain substitute health insurance from a private source.*

In many cases, no one factor, standing alone, will necessarily support the grant or denial of collateral source reductions. Under the circumstances of this case, all of the relevant factors, viewed collectively, prevented the County from establishing with

---

* Parenthetically, this Court, in an order dated January 11, 2007, granted Kihl leave to file a supplemental record, on consent of the County. The supplemental record demonstrates that United denied further coverage of Kihl's morphine lollipops by letter dated August 7, 2006, and that CIGNA HealthCare, which became Finnell's fourth health insurance provider later in 2006, also did not cover that medication. The basis for each denial was that coverage for Actiq lollipops was limited to cancer patients who are opioid tolerant. Although the collateral source hearing predated these developments and thus could not be considered by the Supreme Court, they are, nevertheless, part of the supplemental record that confirms the findings of the Supreme Court. Moreover, the parties commented on United's denial of further coverage in their respective appellate briefs.

"reasonable certainty" that Kihl will receive reimbursements for future medication costs (*see generally Quezada v O'Reilly-Green*, 24 AD3d at 746; *Ruby v Budget Rent A Car Corp.*, 23 AD3d at 258; *Young v Knickerbocker Arena*, 281 AD2d at 762-764; *Giventer v Rementeria*, 184 Misc 2d at 748).

By this opinion, we do not suggest that collateral source reductions for future economic loss cannot be authorized when, as here, plaintiffs' collateral source payments are dependent upon a parent or spouse, or where plaintiffs' life expectancies are lengthy. Each case involving potential future collateral source reductions to awards for economic loss must be judged on its own unique facts and merits. The reasonable certainty test may be met to warrant collateral source offsets in varied instances where defendants' proof establishes a high probability that covered expenses will be replaced or indemnified. An example includes plaintiffs who are entitled to the indefinite payment of first party worker's compensation benefits that are not subject to a lien in favor of the compensation carrier (*see Manfredi v Preston*, 246 AD2d at 580; *Nitzke v Loveland*, 188 AD2d 1058, 1059 [1992]; *Schifelbine v Foster Wheeler Corp.*, 3 Misc 3d 151, 156 [2002]). Another example involves the indefinite payment of Social Security disability payments where plaintiffs are incapable of future work (*see Matter of Meeks v Verizon N.Y., Inc.*, 28 AD3d 991, 993 [2006]; *Ruby v Budget Rent A Car Corp.*, 23 AD3d at 258; *Caruso v LeFrois Bldrs.*, 217 AD2d at 257). Yet another example where the burden of proof can be met, despite a plaintiff's long life expectancy or dependency upon another's coverage, is where future benefits are secured by the existence of a collective bargaining agreement (*cf. Sternfeld v Forcier*, 248 AD2d at 18) or other contract (*see* CPLR 4545 [c]). Proof is available to defendants limited only by the underlying circumstances of the plaintiffs. The result in this case, agreeing with the Supreme Court that the reasonable certainty standard was not met, is dictated by its own unique facts and merits.

The result that we reach here is consistent with the purpose of CPLR 4545, which is to eliminate double recoveries, not to provide defendants and their insurers with an undeserved windfall relieving them of the obligation to pay damages awards for economic loss (*see Bryant v New York City Health & Hosps. Corp.*, 93 NY2d at 607; *Giventer v Rementeria*, 184 Misc 2d at 747). The reasonable certainty standard of proof furthers the overall purpose and intent of CPLR 4545, by assuring that

plaintiffs' awards for past and future economic loss not be reduced absent a "highly probable" evidentiary showing (*e.g. Quezada v O'Reilly-Green*, 24 AD3d at 746; *Ruby v Budget Rent A Car Corp.*, 23 AD3d at 258) that the covered costs and expenses were, or will be, replaced or indemnified from collateral sources (*see* CPLR 4545 [a], [c]). Absent the reasonable certainty of collateral source reductions, the statute, to the extent it departs from common law, prefers double recoveries in favor of plaintiffs over the polar alternative of depriving plaintiffs of a compensatory award for economic losses to which the trier of fact found them entitled.

At oral argument, the County suggested that we consider a mechanism by which the issue of Kihl's collateral source payments could be revisited at periodic intervals throughout her life. The County's suggestion reflects the constructive creativity of the practicing bar; it seeks greater precision in adjusting awards for future economic loss over the course of a plaintiff's lifetime, but at the expense of the interest of parties and courts to enter single judgments which are full and final. Nonetheless, CPLR 4545, which must be strictly construed, contains no language that authorizes the periodic reevaluation of collateral source setoffs during plaintiffs' postverdict lifetimes. The County's remedy, if any, is to pursue its suggestion with the state's legislature rather than in the courts.

The County's remaining contentions are without merit or have been rendered academic by our determination.

In light of the foregoing, the judgment of the Supreme Court is affirmed insofar as appealed from, with costs.

PRUDENTI, P.J., FISHER and DICKERSON, JJ., concur.

Ordered that the judgment is affirmed insofar as appealed from, with costs.