FELIX VASQUEZ et al., Respondents, v COUNTY OF NASSAU et al., Appellants-Respondents, and GLORY E. UPKE, Respondent-Appellant. [938 NYS2d 109]—

This case stems from an accident involving multiple vehicles and two pedestrians at the intersection of Jackson Street and Washington Street in Hempstead, which was governed by traffic light signals. The decedent was carrying the infant plaintiff, her three-year-old disabled son with Down syndrome. As the decedent crossed Jackson Street on the north side of the intersection in the crosswalk, she was struck by a vehicle operated by the defendant Glory E. Upke, after that vehicle was struck by a bus operated by the defendant William Malloy and owned by the defendant Metropolitan Suburban Bus Authority. The force of the impact propelled the decedent into the air and caused her to let go of the infant plaintiff. Prior to the accident, the bus was traveling in a westerly direction on Jackson Street, and the Upke vehicle was traveling in a northerly direction on Washington Street.

There was conflicting evidence adduced at trial as to the speed at which the vehicles were moving as they approached the intersection and about which driver had the right of way. Upke testified that she had a yellow light as she traveled north through the intersection, but several witnesses testified that Malloy, the bus driver, had a green light as he traveled west through the intersection. In any event, Upke did not see the bus until it hit her vehicle in the intersection. Although there was conflicting evidence about whether Malloy looked for other vehicles or pedestrians before proceeding through the intersection, as he approached the intersection, he could see substantially more than 40 feet to his left, which was the direction from which Upke's vehicle was traveling. Nonetheless, he did not see her vehicle until a "split second" before the bus collided with Upke's vehicle. The jury found that the defendants County of Nassau, Metropolitan Suburban Bus Authority, and Malloy (hereinafter collectively the municipal defendants) were 35% at fault in the happening of the accident, and Upke was 65% at fault in the happening of the accident.

"In evaluating the legal sufficiency of the evidence, a court must determine whether there is any valid line of reasoning and permissible inferences which could possibly lead a rational [person] to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Sydnor v Home Depot U.S.A., Inc.*, 74 AD3d 1185, 1187 [2010] [internal quotation marks omitted]; *see Fekry v New York City Tr. Auth.*, 75 AD3d 616, 617 [2010]). Here, a rational person could have concluded that both drivers failed to use reasonable care, and to "see that which

[they] should have seen" as they approached and entered the intersection (*Barbieri v Vokoun*, 72 AD3d 853, 856 [2010]; *see Shea v Judson*, 283 NY 393, 398 [1940]; *Blasso v Parente*, 79 AD3d 923, 925 [2010]; *Nuziale v Paper Transp. of Green Bay Inc.*, 39 AD3d 833, 835 [2007]; *Siegel v Sweeney*, 266 AD2d 200, 201-202 [1999]).

"[A] jury verdict should not be set aside as contrary to the weight of the evidence unless the jury could not have reached the verdict by any fair interpretation of the evidence. Whether a jury verdict should be set aside as contrary to the weight of the evidence does not involve a question of law, but rather requires a discretionary balancing of many factors" (*Fekry v New York City Tr. Auth.*, 75 AD3d at 617 [citations omitted]; *see Cohen v Hallmark Cards*, 45 NY2d 493, 498-499 [1978]; *Sydnor v Home Depot U.S.A., Inc.*, 74 AD3d at 1187). We accord deference to the credibility determinations of the factfinders, "who had the opportunity to see and hear the witnesses" (*Fekry v New York City Tr. Auth.*, 75 AD3d at 617; *see Bertelle v New York City Tr. Auth.*, 19 AD3d 343 [2005]). Moreover, the "jury's apportionment of fault should not be set aside unless it could not have been reached based upon a fair interpretation of the evidence" (*Sydnor v Home Depot U.S.A., Inc.*, 74 AD3d at 1187). Here, the jury's verdict was supported by a fair interpretation of the evidence.

Contrary to the contentions of the municipal defendants, they were not entitled to a jury instruction on the emergency doctrine merely based upon Malloy's testimony that he did not see Upke's vehicle in the intersection until a split second before the collision. Here, the plaintiffs were not seeking to hold any of the municipal defendants responsible for actions Malloy took after the alleged emergency situation arose (*see Jablonski v Jakaitis*, 85 AD3d 969, 970 [2011]). Rather, they claimed that Malloy failed to use reasonable care as he approached the intersection. In other words, he failed to "see that which he should have seen" (*Barbieri v Vokoun*, 72 AD3d at 856; *see Blasso v Parente*, 79 AD3d at 925; *Nuziale v Paper Transp. of Green Bay Inc.*, 39 AD3d at 835), and he should have anticipated the alleged emergency situation by exercising reasonable care to look out for any other vehicles entering, or already in, the intersection (*see Hart v Town of N. Castle*, 305 AD2d 543, 544 [2003]; *Mead v Marino*, 205 AD2d 669, 669-670 [1994]). Under these circumstances, the municipal defendants were not entitled to a jury charge on the emergency doctrine (*see Jablonski v Jakaitis*, 85 AD3d at 970; *Hart v Town of N. Castle*, 305 AD2d at 544; *Mead v Marino*, 205 AD2d at 669-670; *cf. Kuci v Manhattan & Bronx Surface Tr. Operating Auth.*, 88 NY2d 923, 924 [1996]).

The municipal defendants also contend that the admission of certain testimony about the so-called Smith method of driving, which is sometimes used to train operators of large vehicles, and subsequent references to the Smith method improperly imposed a higher standard of care on Malloy than the standard imposed by law. References to manuals or instructions like the Smith method are admissible as evidence of whether reasonable care was exercised if "they do not impose a higher standard of care than that which is imposed by law" (*Conrad v County of Westchester*, 259 AD2d 724, 725 [1999]). Here, the reference to the Smith method did no more than emphasize the common-law standard of care. That method, as described at trial, simply requires that drivers see what there is to be seen before proceeding through an intersection (*see Barbieri v Vokoun*, 72 AD3d at 856), and "exercise reasonable care notwithstanding the invitation to proceed by the green light" (*Siegel v Sweeney*, 266 AD2d at 201; *see Nuziale v Paper Transp. of Green Bay Inc.*, 39 AD3d at 835).

Contrary to the contentions of both the municipal defendants and Upke, the trial court properly admitted the decedent's tax returns into evidence to prove damages for loss of financial support (*see Deans v Jamaica Hosp. Med. Ctr.*, 64 AD3d 742, 744 [2009]; *L. Smirlock Realty Corp. v Tit. Guar. Co.*, 97 AD2d 208, 239 [1983], *mod* 63 NY2d 955 [1984]; *cf. People v Matthews*, 16 AD3d 135, 137 [2005]).

The defendants also challenge the awards for certain items of damages as excessive. Contrary to the defendants' contentions, the damages awarded for the decedent's conscious past pain and suffering did not deviate materially from what would be reasonable compensation (*see Gersten v Boos*, 57 AD3d 475, 477 [2008]; *Bennett v Henry*, 39 AD3d 575, 576 [2007]). With respect to the calculation of past and future loss of the decedent's financial support and household services for the infant plaintiff, the plaintiffs adduced the testimony of an expert witness, and the defendants did not refute that testimony by presenting their own expert witness or otherwise. The plaintiffs' evidence established past and future loss of the decedent's financial support with reasonable certainty, and the damages awards in these categories did not deviate materially from what would be reasonable compensation (*see Calo v Perez*, 211 AD2d 607, 608 [1995]; *Allen v New York City Tr. Auth.*, 148 AD2d 563 [1989]; *cf. Klos v New York City Tr. Auth.*, 240 AD2d 635, 637-638 [1997]). In light of the evidence, inter alia, regarding the special, lifetime needs of the disabled infant plaintiff, which were projected to continue throughout his adulthood, the damages

awards for past and future loss of the decedent's household services were "reasonably certain to be incurred and necessitated" (*Schultz v Harrison Radiator Div. Gen. Motors Corp.*, 90 NY2d 311, 321 [1997]; *see generally De Long v County of Erie*, 60 NY2d 296, 307 [1983]; *Presler v Compson Tennis Club Assoc.*, 27 AD3d 1096, 1097 [2006]), and did not deviate materially from what would be reasonable compensation (*cf. Kihl v Pfeffer*, 47 AD3d 154, 161 [2007]; *Allen v New York City Tr. Auth.*, 148 AD2d at 563). Further, the damages awarded for past and future loss of parental care and guidance did not deviate materially from what would be reasonable compensation (*see Bogen v State of New York*, 5 AD3d 521 [2004]; *Adderley v City of New York*, 304 AD2d 485, 486 [2003]; *Zygmunt v Berkowitz*, 301 AD2d 593, 594 [2003]; *Paccione v Greenberg*, 256 AD2d 559, 561 [1998]). Moreover, contrary to the defendants' contentions, damages for loss of household services are not duplicative of damages for loss of parental care and guidance; these types of losses are separate and distinct (*see Gonzalez v New York City Hous. Auth.*, 77 NY2d 663, 668 [1991]; *Klos v New York City Tr. Auth.*, 240 AD2d at 638; *Kiker v Nassau County*, 175 AD2d 99, 102 [1991]), and here the plaintiffs offered evidence in support of both (*see Allen v New York City Tr. Auth.*, 148 AD2d at 563; *cf. Merola v Catholic Med. Ctr. of Brooklyn & Queens, Inc.*, 24 AD3d 629, 631 [2005]; *Zygmunt v Berkowitz*, 301 AD2d at 594).

The parties' remaining contentions are unpreserved for appellate review or without merit. Angiolillo, J.P., Florio, Chambers and Hall, JJ., concur.