In an action to recover damages for personal injuries and wrongful death based upon medical malpractice, the defendant appeals, as limited by its brief, from so much of a judgment of the Supreme Court, Queens County (Kerrigan, J.), entered May 16, 2012, as, upon a jury verdict on the issue of damages awarding the plaintiffs the principal sums of $5,000,000 for the decedent’s conscious pain and suffering, $336,000 for the past economic loss sustained by the distributees of the decedent’s estate, and $2,243,560 for the future economic loss sustained by the distributees of the decedent’s estate, upon an order of the same court dated April 16, 2012, granting its motion pursuant to CPLR 4404 (a) to set aside the jury verdict on damages as contrary to the weight of the evidence and as excessive only to the extent of directing a new trial on the issue of damages for *751 the decedent’s conscious pain and suffering, unless the plaintiffs filed a written stipulation consenting to a reduction in the award for the decedent’s conscious pain and suffering from the principal sum of $5,000,000 to the principal sum of $3,750,000, and upon the plaintiffs’ filing of a stipulation to reduce the award for the decedent’s conscious pain and suffering to the principal sum of $3,750,000, is in favor of the plaintiffs and against it in the principal sums of $3,750,000 for the decedent’s conscious pain and suffering, $336,000 for past economic loss sustained by the distributees of the decedent’s estate, and $2,243,560 for the future economic loss sustained by the distributees of the decedent’s estate.
Ordered that the judgment is modified, on the law and the facts, by deleting the provision thereof in favor of the plaintiffs and against the defendant in the principal sum of $336,000 for the past economic loss sustained by the distributees of the decedent’s estate; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements, that branch of the defendant’s motion pursuant to CPLR 4404 (a) which was to set aside, as excessive, the jury verdict on the issue of damages for the past economic loss sustained by the distributees of the decedent’s estate is granted, the order dated April 16, 2012, is modified accordingly, and the matter is remitted to the Supreme Court, Queens County, for a new trial on the issue of damages for past economic loss sustained by the distributees of the decedent’s estate, and for the entry of an appropriate amended judgment thereafter, unless, within 30 days after service upon the plaintiffs of a copy of this decision and order, the plaintiffs shall serve and file in the office of the Clerk of the Supreme Court, Queens County, a written stipulation consenting to reduce the verdict as to damages for past economic loss sustained by the distributees of the decedent’s estate from the principal sum of $336,000 to the principal sum of $250,000, and to the entry of an appropriate amended judgment accordingly; in the event that the plaintiffs so stipulate, then the judgment, as so modified, reduced, and amended, is affirmed insofar as appealed from, without costs or disbursements.
This is an action seeking damages for personal injuries and the wrongful death of the decedent, Nam Yoon Lee, as a result of the medical malpractice of the defendant, New York Hospital Queens (hereinafter the hospital). The decedent was admitted to the hospital on the morning of June 18, 2008, and diagnosed with gallstones and an inflamed gallbladder. He was scheduled for surgery to remove his gallbladder the next morning, June 19, 2008, but the operation did not take place on that date, nor *752 did it take place the following day, or the day after that. During this period, the decedent was retained as an inpatient at the hospital, without being provided food or drink by mouth, in preparation for the surgery that never took place. On Sunday, June 22, 2008, the decedent developed systemic sepsis and, at 3:02 p.m. on that day, while being intubated, he suffered full cardiac arrest. After attempts to revive him failed, he was pronounced dead at 3:50 p.m.
The hospital conceded its liability for medical malpractice and, thus, the action proceeded to a trial on the issue of damages only. The plaintiffs sought damages for, inter alia, the decedent’s conscious pain and suffering, and for past and future economic loss sustained by the decedent’s wife and daughter. Among other things, the plaintiffs sought damages sufficient to replace the services provided by the decedent in taking care of his daughter, who was 32 years old at the time of the trial and had been diagnosed with schizophrenia and seizure disorder, and had a mental disability resulting in her having the IQ of an eight-year-old child.
Contrary to the hospital’s contentions, admissible evidence established the decedent’s conscious pain and suffering during the days prior to his death and on the day of his death. The decedent’s statements to his wife on Saturday, June 21, 2008, and Sunday, June 22, 2008, complaining of pain, discomfort, hunger, difficulty breathing, and feeling that he was dying, were excited utterances or present sense impressions, or both, and therefore admissible as exceptions to the hearsay rule “for the truth of the matters they assert[ed]” (Nucci v Proper, 95 NY2d 597, 602 [2001]; see People v Brown, 80 NY2d 729, 734-735 [1993]; People v Brown, 70 NY2d 513, 518, 519 [1987]; Seaberg v North Shore Lincoln-Mercury, Inc., 85 AD3d 1148, 1150 [2011]; Bayne v City of New York, 29 AD3d 924, 925 [2006]; Matter of Talisveyber v Motor Veh. Acc. Indem. Corp., 16 AD3d 425, 426 [2005]). The present sense impressions were sufficiently corroborated (see People v Vasquez, 88 NY2d 561, 574-575 [1996]; Seaberg v North Shore Lincoln-Mercury, Inc., 85 AD3d at 1151) by the testimony of the decedent’s wife regarding the decedent’s appearance when she visited him, as well as the testimony of the plaintiffs’ medical experts based on the hospital records.
Also admissible was the testimony of the plaintiffs’ expert anesthesiologist regarding the decedent’s pain and suffering while being intubated with insufficient sedation. “It is settled and unquestioned law that opinion evidence must be based on facts in the record or personally known to the witness” *753 (Hambsch v New York City Tr. Auth., 63 NY2d 723, 725 [1984] [internal quotation marks omitted]; see Cassano v Hagstrom, 5 NY2d 643, 646 [1959]; Nyon Sook Lee v Shields, 188 AD2d 637, 639 [1992]; Interstate Cigar Co. v Dynaire Corp., 176 AD2d 699, 700 [1991]). The facts must be “either established or fairly inferable from the evidence” (Naveja v Hillcrest Gen. Hosp., 148 AD2d 429, 430 [1989]; see Reilly v Ninia, 81 AD3d 913, 916 [2011]; Overeem v Neuhoff, 254 AD2d 398, 399 [1998]). Here, the anesthesiologist’s testimony was not speculative, but was based on facts in the medical record and facts “fairly inferable” therefrom. Based on his expertise and experience in the area of “airway management of patients,” and the information in the record stating that the decedent was given 40 milligrams of the sedative Propofol and 100 milligrams of the paralyzing agent succinylocholine, the anesthesiologist could fairly infer that, during the intubation, except for the first two or three minutes, the decedent was fully conscious, though paralyzed at first, “unanesthetized [with] a tube in his throat, making him gag,” and experiencing “conscious distress, suffering, [and] terror.”
The decedent’s conscious pain and suffering was established by the above testimony, together with the testimony of the plaintiffs’ expert in the area of surgery, and the testimony of one of the decedent’s treating physicians, an employee of the defendant. Based on this evidence, the jury reasonably could have concluded that the decedent suffered, for 3V2 days, from intermittent, but ongoing, sharp gallbladder pain, increasing anxiety as each day passed with no surgery and no explanation for the delay, and growing discomfort due to the regimen of no food or drink by mouth. These witnesses also testified—and their testimony is confirmed by notes in the hospital record— that from approximately 6:00 a.m. on Sunday June 22, 2008, until 2:48 or 2:50 p.m. on that date, the decedent experienced intermittent bouts of agitation, sense of impending death, pain, respiratory distress, shivering, shaking, and chills. Finally, during the last 10 to 12 minutes before the decedent lost consciousness and died, the testimony established that he experienced conscious pain and suffering.
Accordingly, the jury’s determination that the decedent’s conscious pain and suffering was far from minimal in duration or intensity was not contrary to the weight of the evidence. Furthermore, the award of the sum of $3,750,000 for the decedent’s conscious pain and suffering did not deviate materially from what would be reasonable compensation (see CPLR 5501 [c]).
“In a wrongful death action, an award of damages is limited *754 to fair and just compensation for the pecuniary injuries resulting from the decedent’s death to the persons for whose benefit the action is brought” (Klos v New York City Tr. Auth., 240 AD2d 635, 637 [1997]; see EPTL 5-4.3; Leger v Chasky, 55 AD3d 564, 565 [2008]). We agree with the hospital that the plaintiffs failed to establish the decedent’s lost earnings, past or future. However, “[i]n the case of a decedent who was not a wage earner, ‘pecuniary injuries’ may be calculated, in part, from the increased expenditures required to continue the services [he or she] provided, as well as the compensable losses of a personal nature, such as loss of guidance” (Gonzalez v New York City Hous. Auth., 77 NY2d 663, 668 [1991]; see De Long v County of Erie, 60 NY2d 296, 307 [1983]; Plotkin v New York City Health & Hosps. Corp., 221 AD2d 425, 426 [1995]).
“[T]he standard by which to measure the value of past and future loss of household services is the cost of replacing the decedent’s services” (Klos v New York City Tr. Auth., 240 AD2d at 637; see De Long v County of Erie, 60 NY2d at 307). While the decedent’s wife testified that the decedent spent a minimum of 20 hours per week performing household chores such as laundry, cooking, and cleaning, there was no evidence presented of any actual expenditures incurred in replacing these kinds of household services in the past, or of expected future expenditures with regard to these chores (see Schultz v Harrison Radiator Div. Gen. Motors Corp., 90 NY2d 311, 320 [1997]; Gonzalez v New York City Hous. Auth., 77 NY2d at 668; De Long v County of Erie, 60 NY2d at 307; Plotkin v New York City Health & Hosps. Corp., 221 AD2d at 426). Nor does the record show any evidence of past expenditures to be compensated based on the loss of the decedent’s services in caring for his daughter, also a category of household services. However, with regard to the future loss of the decedent’s care of his daughter, in light of the extensive evidence “regarding the special, lifetime needs of the disabled [daughter], which were projected to continue throughout [her life], the damages award[ ] for . . . future loss of the decedent’s household services were ‘reasonably certain to be incurred and necessitated’ ” (Vasquez v County of Nassau, 91 AD3d 855, 858-859 [2012], quoting Schultz v Harrison Radiator Div. Gen. Motors Corp., 90 NY2d at 321). Moreover, the jury could reasonably have concluded, based on a fair interpretation of the evidence (see Lolik v Big V Supermarkets, 86 NY2d 744, 746 [1995]; Curry v Hudson Val. Hosp. Ctr., 104 AD3d 898, 900 [2013]; Williams v City of New York, 71 AD3d 1135, 1137 [2010]; Carter v New York City Health & Hosps. Corp., 47 AD3d 661, 663 [2008]), including the testimony of the plaintiffs’ psychiatric expert, that a licensed practical nurse, billing at the rate of *755 $35 per hour, would be required to replace the decedent’s services in caring for the decedent’s daughter at home. Accordingly, even if based solely on the expense of hiring a licensed practical nurse for the period of the decedent’s life expectancy, the amount awarded for future economic loss does not “deviate[ ] materially from what would be reasonable compensation” (Klos v New York City Tr. Auth., 240 AD2d at 637; see CPLR 5501 [c]).
Since there were no past lost earnings or housekeeping expenses, the award of $336,000 for past economic loss could only be based on the decedent’s daughter’s loss of parental care and guidance. “[I]t has long been recognized that pecuniary advantage results as well from parental nurture and care, from physical, moral and intellectual training, and that the loss of those benefits may be considered within the calculation of ‘pecuniary injury’ ” (Zygmunt v Berkowitz, 301 AD2d 593, 594 [2003], quoting Kenavan v City of New York, 120 AD2d 24, 33 [1986], affd 70 NY2d 558 [1987] [some internal quotation marks omitted]). While there is ample evidence in the record of the parental guidance and care that the decedent provided to his daughter, we find that the award here deviated materially, to the extent indicated, from what would be reasonable compensation for the loss of parental guidance for the period between the death of the decedent and the date of the verdict (see Vasquez v County of Nassau, 91 AD3d 855 [2012]; Carlson v Porter, 53 AD3d 1129, 1130 [2008]; Bryant v New York City Health & Hosps. Corp., 250 AD2d 797 [1998], mod 93 NY2d 592 [1999]; Klos v New York City Tr. Auth., 240 AD2d 635 [1997]).
The hospital’s remaining contentions are without merit.
Dickerson, J.E, Leventhal, Hall and Miller, JJ., concur.